**STATE of Missouri, Plaintiff–Respondent,**

v.

**Daniel L. COLLIS, Defendant–Appellant.**

**No. 25656.**

Missouri Court of Appeals, Southern District, Division Two.

Aug. 2, 2004.

Ruth B. Sanders, Kansas City, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Asst. Atty. Gen. of Jefferson City, MO, for respondent.

JEFFREY W. BATES, Judge.

Daniel Collis ("Defendant") was charged by information with committing two class A felonies arising out of the death of Sara Tibbets ("Victim"): (1) murder in the second degree, in violation of § 565.021; and (2) abuse of a child, in violation of § 568.060.[1] A jury found Defendant guilty of each offense, but made no sentencing recommendation because Defendant was a prior and persistent offender. The trial court imposed sentences of life imprisonment for the murder conviction and 12 years imprisonment for the child abuse conviction. Defendant appeals, contending the trial court erred in admitting hearsay statements made by Victim because the time, content and circumstances of her statements did not provide a sufficient indicia of reliability to authorize their admis-

---

1. All references to statutes are to RSMo (2000).

sion pursuant to § 491.075. Because the hearsay evidence challenged by Defendant was cumulative of other properly-admitted evidence, we conclude that Defendant suffered no prejudice from the trial court's ruling. Therefore, we affirm.

Given the narrow scope of the single issue presented by Defendant's appeal, an exhaustive recitation of the facts is not necessary. Defendant does not contest the sufficiency of the evidence to support his convictions. Viewed in a light most favorable to the verdict, the following facts were adduced at trial.

On March 16, 2000, Victim was a 38 pound little girl who was almost three years old. She resided in a duplex in Belle, Missouri, with her mother, Tommie Tibbets ("Tommie"); her 18–month–old sister, Marla; and her mother's boyfriend, Defendant. At approximately 7:30 p.m., an ambulance arrived at the residence in response to a 911 call requesting assistance for a child who was unconscious and probably not breathing. When medical personnel arrived, Tommie was holding Victim on the front lawn of the duplex. Victim was unresponsive and had very slow respirations and pulse. Victim was loaded into the ambulance and taken to Phelps County Regional Medical Center in Rolla, Missouri. As one of the emergency medical technicians began to initiate C.P.R., he observed extensive bruising on Victim's abdomen and chest. About five minutes after the ambulance left the scene, Victim's heartbeat and breathing stopped. Despite further resuscitative efforts at the hospital, Victim was pronounced dead.

An autopsy revealed that Victim had been severely beaten. She was covered with bruises, "much more" than half of which were fresh. She had sustained blunt abdominal trauma, most likely as the result of being struck multiple times in the abdomen by a hand or fist, which caused significant internal injuries. Victim's mesentery, which supplies blood to the intestines, was extensively torn; she also had a lot of soft tissue tearing on her right side. Each of these injuries would have caused massive internal bleeding. Approximately half of Victim's blood was found free inside her abdominal cavity. This rapid blood loss caused Victim's death within one to two hours after her abdominal injuries were inflicted. During that two-hour time frame, Defendant and Tommie were both in the duplex with Victim. No other persons were present except Victim's baby sister, Marla.

At trial, the State contended Defendant was the person who beat Victim to death. Defendant claimed Tommie did it. As noted, the autopsy revealed Victim had other injuries which predated the fatal injuries inflicted upon her on March 16, 2000. The State presented testimony concerning these prior injuries from Victim's grandmother, Debra Hall ("Debra"), and Victim's aunt, Shannon Tibbets ("Shannon"). Shannon testified that she had been asked to take care of Victim and Marla in early February 2000. At that point in time, Tommie and Defendant had been living together about a month. When Defendant and Tommie dropped the children off at Shannon's home, Shannon observed that Tommie had a black eye. After Defendant and Tommie left, Shannon also noticed that Victim had the following injuries: (1) a black eye; (2) bruises covering one-half of her face from her nose to the back of her head; and (3) bruises on her legs and buttocks. Victim had difficulty walking or bending over, and she screamed in pain when attempting either of these activities. When Victim's condition worsened overnight, she called Debra for advice. After observing Victim's injuries, Debra took the child to a hospital and called the Division

of Family Services to report her as being abused.

Debra and Shannon each had a conversation with Victim about how she had been injured. When initially asked what happened, Victim said she had fallen in the woods. On further questioning, she said, "Mommy did it" and "Daddy did it." Since Victim's biological father did not live with her, Shannon asked Victim who "Daddy" was. Victim identified Defendant as "Daddy." Victim made the same statements to Debra concerning how she was injured: she fell in the woods; "Mommy did it;" and "Daddy did it."

Prior to trial, the State gave notice pursuant to § 491.075.3 that it intended to offer these hearsay statements from Victim in evidence. As required by § 491.075.1(1), each of the trial judges assigned to this case held a hearing outside the presence of the jury to determine the admissibility of this evidence.[2] Each found that the time, content and circumstances of Victim's statements provided a sufficient indicia of reliability to warrant their admission.

■ At trial, Defendant objected to the admission of Victim's hearsay statements through the testimony of Debra and Shannon. Defendant's objections were overruled, and Victim's statements were admitted. The only issue presented by Defendant's appeal is whether the trial court erred when it made these two evidentiary rulings. For the reasons set forth below, we find it unnecessary to decide this question.

■ In reviewing a trial court's admission or exclusion of testimony, we are mindful that "[t]rial courts have broad dis-

cretion in determining the admissibility of evidence." *State v. Churchill*, 98 S.W.3d 536, 538 (Mo. banc 2003). Furthermore, we will not reverse a judgment because of error in the admission or exclusion of evidence unless the error was so prejudicial that it deprived the defendant of a fair trial. *State v. Richardson*, 923 S.W.2d 301, 311 (Mo. banc 1996); *State v. DeClue*, 128 S.W.3d 864, 868 (Mo.App.2004). For this reason, "[a] conviction will be reversed due to admission of improper evidence only if Appellant proves prejudice by showing a reasonable probability that in the absence of such evidence the verdict would have been different." *State v. Kreidler*, 122 S.W.3d 646, 649 (Mo.App.2003); *see also State v. Barriner*, 111 S.W.3d 396, 401 (Mo. banc 2003) (trial error does not require reversal unless there is a reasonable probability that the error affected the outcome of the trial). Erroneously admitted evidence is not considered prejudicial where similar evidence is properly admitted elsewhere in the case or has otherwise come into evidence without objection. *State v. Bucklew*, 973 S.W.2d 83, 93 (Mo. banc 1998); *State v. Gilbert*, 121 S.W.3d 341, 346 (Mo.App.2003); *State v. Ponder*, 950 S.W.2d 900, 910 (Mo.App.1997).

In the case at bar, Victim's statements did not concern the fatal injuries she received on March 16, 2000. The only relevance of this evidence was whatever indirect tendency it had to assist the jury in deciding whether Defendant or Tommie inflicted the beating that killed Victim on March 16th. Two of the three explanations Victim gave for her injuries in February 2000 tended to exculpate Defendant because Victim attributed her injuries to an accident or the actions of another per-

---

**2.** The case against Defendant was initially assigned to Judge Douglas Long, who held a § 491.075 hearing on March 13, 2002. For reasons not disclosed by the record provided

to us, the case was reassigned to Judge John Moody, who held another § 491.075 hearing on January 2, 2003.

son. The only inculpatory aspect of Victim's equivocal statement was the portion in which she stated, "Daddy did it." We conclude Defendant was not prejudiced by the admission of Victim's hearsay statements because they were cumulative of other properly-admitted evidence in the case.

During the State's case, Exhibit 22 was admitted in evidence after Defendant's counsel affirmatively stated that he had "no objection" to its admission. This exhibit was a packet of letters that Defendant had written to Tommie while Defendant was in the Maries County jail awaiting trial. The main thrust of the letters was to convince Tommie, who also was incarcerated and awaiting trial on charges arising from Victim's death, that they should each blame the other for Victim's death if they were granted separate trials. In one of the letters, Defendant stated, in pertinent part:

Tommie, there is a lot I need to tell you, so let me start here. Yes, I told them I heard [Victim] yell twice. I told you that . . . . my defense was to try and convince my jury that you did it and you need to do the same. . . . [Y]ou said in your first two interviews and all through the discovery that you never left that day and you was at the house all day. [T]hen on your third interview you said you left twice and you only was saying that stuff because you was afraid of me. Well, that's good, because as you need, I also said you left the house only twice with me that day. So tell them that I made you say you didn't leave because they might blame me. Because why you lied and said you didn't at first beats me, but you did. Just do as I say. Go ahead and tell the truth, that I did the hitting of [Victim] in February and I'll tell them why I blacked your eye over how I treated [Victim] in February for that week. Okay? And please don't use

this letter unless you have to, only if we get separate trials. Because if we don't, I'll tell them I made all that stuff up about the two screams, I promise. And I've never once said you beat your kids, because I know you have never. Not once the whole time I have been with you. . . .

Defendant made similar comments in another letter in which he stated:

That has to be your defense, that I could have did it when you went to Casey's. And I tell them the truth about why I gave you that black eye. That you was protecting [Victim] from me. Okay? Just make sure we get separate trials. That's the key factor right there.

During Defendant's case, he was called as the final witness. Defendant admitted that he had authored the foregoing letters and written the statements quoted above. He also acknowledged that Victim called him "Daddy." His testimony was admitted without objection.

In Defendant's letters, he unequivocally admitted causing the injuries that Victim sustained in February 2000. Even if Victim's hearsay statements tending to prove the same fact should have been excluded—an issue we do not decide—the error was not prejudicial because Victim's statements were entirely cumulative of Defendant's own admissions. *See State v. Morrow,* 968 S.W.2d 100, 112 (Mo. banc 1998) (admission of hearsay statements implicating defendant in a murder was not prejudicial because defendant had confessed to committing the murder); *see also State v. Clay,* 975 S.W.2d 121, 136 (Mo. banc 1998) (admission of hearsay statements by a police officer that he had seen someone jump from a car and run away was not prejudicial because defendant admitted in his own testimony that he had "bailed out" and started running when the car stopped).

■ We hold that Defendant is entitled to no relief on appeal because the admission of Victim's hearsay statements, if error at all, was harmless. Our conclusion is not changed by the fact that Defendant contends the admission of this testimony violated his federal and state constitutional rights to confrontation.[3] "When evidence challenged on constitutional grounds is cumulative of other properly-admitted evidence, the disputed evidence could not have contributed to the defendant's conviction and is harmless beyond a reasonable doubt." *State v. Lopez,* 128 S.W.3d 195, 202 (Mo.App.2004). Therefore, the judgment of the trial court is affirmed.

SHRUM, J., and RAHMEYER, C.J.-P.J., concur.

---

3. U.S. Const. amend. VI; Mo. Const. art. I, § 18(a).