STATE of Missouri, Plaintiff–
Respondent,

v.

Dale Gene CROSS, Defendant–
Appellant.

No. SD 31974.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 30, 2013.

Ellen H. Flottman, Columbia, MO, for appellant.

Dora A. Fichter, Jefferson City, MO, for respondent.

MARY W. SHEFFIELD, J.

Dale Gene Cross ("Defendant") appeals his convictions for second-degree murder, second-degree arson, and armed criminal action. *See* §§ 565.021, 569.050, 571.015.[1]

---

1. All statutory references are to RSMo (2000).

He raises two points on appeal, claiming (1) the trial court abused its discretion in excluding "the testimony of John Matney about what Danny Snethern told him" and (2) the trial court erred in denying his motion based on his allegation that the State violated Rule 25.03[2] by failing to disclose recordings of telephone calls Defendant made while he was incarcerated awaiting trial. These points are without merit, and Defendant's convictions and sentences are affirmed.

### Factual and Procedural History

Annette Cross–Sanford ("Cross–Sanford") is Defendant's sister. Cross–Sanford had two children with Andrew Day ("Victim"). Cross–Sanford lived in Lawrence, Kansas; Defendant lived in Hannibal, Missouri; and Victim lived in Mountain View, Missouri. During August 2009, Cross–Sanford's daughter reported to Defendant that her "private" hurt after she returned from visitation with Victim.

On September 14, 2009, Defendant's mother, Joann Cross ("Cross"), purchased a handgun at a pawn shop. Cross–Sanford drove with her children to Hannibal. The children remained with Cross at Defendant's home. Cross–Sanford and Defendant put on black hooded sweatshirts and drove to Victim's home.

At Victim's home, Defendant left the gun on the roof of the car while Defendant and Cross–Sanford spoke with Victim. A confrontation ensued with Victim shoving Defendant. Defendant went back to the car to retrieve the gun. Defendant then shot Victim and lit the couch on fire.

One of Victim's neighbors drove by Victim's home at about 5:30 a.m. on September 15, 2009, noticed that Victim's home was on fire, and called 911. After the fire

was extinguished, Victim's body was found in the remains of the home. Victim had been shot four times, twice in the head and twice in the chest.

Defendant was subsequently arrested. After being advised of his *Miranda*[3] rights, Defendant admitted shooting Victim and setting the home on fire.

Defendant was charged with first-degree murder, first-degree arson, and armed criminal action. The jury found Defendant guilty of second-degree murder, second-degree arson, and armed criminal action. In a subsequent proceeding, the jury recommended sentences of 25 years for second-degree murder, 7 years for second-degree arson, and 25 years for armed criminal action. The judge sentenced Defendant in accordance with the jury's recommendation, and this appeal followed.

### Discussion

### Point I: Hearsay

In his first point, Defendant claims the trial court erred in excluding testimony from John Matney ("Fire Marshal") about statements made by a person named Danny Snethern ("Snethern"). Defendant argues Snethern's statements were admissible under the residual hearsay exception. Defendant's argument is without merit because he was not prejudiced by the exclusion of the evidence.

The following additional facts are relevant to the resolution of this claim. Prior to trial, Defendant filed a "Motion to Permit Introduction of Eyewitness Statement by Deceased Eyewitness." At the hearing regarding the motion, Defendant presented Fire Marshal's testimony. During the course of his investigation, Fire Marshal interviewed Snethern. On the morn-

---

**2.** All rule references are to Missouri Court Rules (2013).

**3.** *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ing of the fire, Snethern saw smoke coming from Victim's home and observed a female run from the back of Victim's home. He also noticed a car parked outside with a man in the driver's seat. Snethern saw the car drive off with the female in the passenger seat. Defendant also presented Snethern's death certificate at the hearing. Defense counsel argued the evidence was admissible under the residual hearsay exception. The judge ruled the evidence would not be admitted.

At trial after the State rested its case, Defendant again attempted to introduce the evidence of Snethern's statements. The parties agreed the testimony at the pre-trial hearing could be used as the offer of proof. The trial court maintained its ruling and refused to admit Fire Marshal's statement containing Snethern's statement.

■ We review trial court decisions regarding the admission or exclusion of evidence for abuse of discretion. *State v. Norman*, 145 S.W.3d 912, 919 (Mo.App. S.D.2004). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. White*, 329 S.W.3d 710, 712 (Mo.App.S.D. 2010). Furthermore, "[w]e will not reverse a judgment because of error in the admission or exclusion of evidence unless the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Collis*, 139 S.W.3d 638, 641 (Mo.App. S.D.2004).

■ "Hearsay statements are out-of-court statements used to prove the truth of the matter asserted[.]" *State v. Harrison*, 213 S.W.3d 58, 76 (Mo.App.S.D.2006) (quoting *State v. Lockett*, 165 S.W.3d 199, 204 (Mo.App. E.D.2005)). Testimony regarding hearsay statements is not admissi-

ble unless it fits into a recognized exception. *State v. Newsom*, 299 S.W.3d 784, 788–89 (Mo.App.S.D.2009). The residual hearsay rule as applied in the federal courts and several other jurisdictions, "allows admission of statements not specifically covered by any other exception when they have equivalent circumstantial guarantees of trustworthiness." *State v. Freeman*, 269 S.W.3d 422, 428 (Mo. banc 2008). However, the Supreme Court of Missouri "has never adopted the residual hearsay exception rule[.]" *Id.*

■ Nevertheless, we need not reach the issue of whether the statements were admissible because Defendant suffered no prejudice as a result of their exclusion. "Although there is a rebuttable presumption that excluded admissible evidence is prejudicial, this presumption is rebutted when the error is harmless beyond a reasonable doubt." *Norman*, 145 S.W.3d at 919–20. In determining whether the exclusion of evidence was harmless beyond a reasonable doubt, "we take special note of all evidence presented, the nature of the charge and the role the excluded evidence would have played in the defense's theory." *Id.* at 920. Where the excluded evidence would have been cumulative of evidence already before the jury, the exclusion of the evidence is harmless beyond a reasonable doubt. *Id. See also State v. Robinson*, 108 S.W.3d 689, 696 (Mo.App.W.D.2003); *Collis*, 139 S.W.3d at 641.

■ In the present case, Snethern's statements were cumulative of evidence admitted at trial. The jury heard a recording of the interview between the police and Defendant. During that interview, the officers told Defendant a witness had reported seeing Cross–Sanford run from the back of Victim's home on the morning of the crimes. This evidence was substan-

tially the same as Snethern's statements to Fire Marshal about seeing a female run from the back of Victim's home on the morning of the crimes. Hence, Fire Marshal's testimony would have been cumulative and Defendant was not prejudiced by the trial court's decision to exclude that testimony.

Defendant's first point is denied.

### Point II: Discovery Violation

In his second point, Defendant argues the trial court erred in overruling his motion for new trial based on the State's alleged discovery violations. More specifically, he claims the State failed to disclose recordings of phone calls Defendant made while incarcerated pending trial. Defendant's point is without merit because earlier disclosure would not have created a reasonable probability of a different result at trial.

The following additional facts are relevant to the disposition of this point. Prior to trial, Defendant filed a motion seeking discovery from the State. Among the many things requested in that motion were "[t]he names and last known addresses of persons whom the State intends to call as witnesses at any hearing or trial, together with their written or recorded statements and existing memoranda reporting or summarizing part or all of their oral statements[,]" and "[a]ny and all written or recorded statements and the substance of any oral statements made by the defendant or by any codefendant, a list of witnesses to the making, and a list of witnesses to the acknowledgment of such statements and the last known addresses of such witnesses[.]"

After Defendant had been found guilty and had filed his motion for new trial, Defendant filed an additional motion titled "Motion for Relief Pursuant to 25.18 for Discovery Violations or in the Alternative for Consideration of Whether Defendant Received Effective Assistance of Counsel Due to States [sic] Failure to Disclose." The trial court held a hearing on the motion on December 22, 2011.

At the hearing, the lead prosecutor on Defendant's case testified he received a letter from Defendant in October 2009. In the letter, Defendant stated a person named "Jimmy" was going to give him an alibi. The prosecutor then requested that his investigator listen to the recordings of Defendant's telephone calls from the jail to determine if Defendant was attempting to get someone to change their testimony. The investigator listened to numerous phone calls and found nothing of evidentiary value. He reported his findings to the prosecutor. The prosecutor did not provide the recordings to the defense. After the guilt phase of trial, but before the penalty phase of trial, Defendant's attorney learned about the recordings.

At the hearing on the motion for sanctions, Defendant's attorney also introduced CDs containing many hours of recorded telephone calls. The calls primarily concerned family matters and making arrangements for Defendant's property. Some procedural aspects of the case were discussed, such as whether to request a change of venue and whether Defendant should accept the State's plea offer. No factual information about the crimes was provided during these conversations beyond Defendant's bare assertions that he was not guilty of the crime and that the State had no evidence against him.

Defendant's attorney argued the State committed a Rule 25.03 violation because the prosecutor deliberately did not tell the defense about the recordings of Defendant's conversations with endorsed witnesses. She stated the failure prevented her from having the opportunity to pre-

pare and present the testimony of Cross–Sanford. The prosecutor responded that earlier disclosure of the material would not have affected the outcome of trial because the conversations did not have anything to do with the case. The prosecutor also asserted Cross–Sanford's testimony would have implicated Defendant in the crimes and her attorney told the prosecution she would not testify in the case.

The trial judge took the motion under advisement so he could listen to the recorded phone calls and make a ruling. When the parties returned to court for sentencing several months later, the trial court denied the motion finding the recordings would not have affected the outcome of the case.

Trial courts have discretion to determine whether a discovery rule has been violated, *State v. Willis*, 2 S.W.3d 801, 803 (Mo.App.W.D.1999), and to fashion an appropriate remedy in the event of a violation, *State v. Jamison*, 163 S.W.3d 552, 557 (Mo.App.E.D.2005). Appellate review of such decisions is for abuse of discretion. *State v. Bynum*, 299 S.W.3d 52, 62 (Mo.App.E.D.2009). In the context of evaluating an alleged discovery violation, an abuse of discretion occurs where the nondisclosure results in fundamental unfairness to the accused. *Willis*, 2 S.W.3d at 803. "Fundamental unfairness turns on whether there was a reasonable likelihood that an earlier disclosure of the requested evidence would have affected the result of the trial." *Jamison*, 163 S.W.3d at 557.

Rule 25.03 provides in pertinent part that

the state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information with-

in its possession or control designated in said request:

(1) The names and last known addresses of persons whom the state intends to call as witnesses at any hearing or at the trial, together with their written or recorded statements, and existing memoranda, reporting or summarizing part or all of their oral statements; [and]

(2) Any written or recorded statements and the substance of any oral statements made by the defendant or by a co-defendant, a list of all witnesses to the making, and a list of all witnesses to the acknowledgement, of such statements, and the last known addresses of such witnesses[.]

Rule 25.03(A). Although the obligations imposed by Rule 25.03 overlap with the obligations created by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Rule 25.03 extends to both favorable and unfavorable evidence. *State v. Grant*, 784 S.W.2d 831, 835 (Mo.App. E.D. 1990).

Assuming, without deciding, that the recordings should have been disclosed to the defense, Defendant is not entitled to relief because the nondisclosure did not result in fundamental unfairness. Courts will not find fundamental unfairness where the State makes limited use of the undisclosed material and where there is strong evidence of guilt. *See State v. Brooks*, 960 S.W.2d 479, 495 (Mo. banc 1998); *Jamison*, 163 S.W.3d at 557. Here, the State did not use the material at trial in any way. Furthermore, there was strong evidence of guilt, including Defendant's admissions. Thus, no fundamental unfairness resulted from the State's failure to disclose the existence of the recordings. As no fundamental unfairness arose from the State's failure to disclose the material, the trial court did not abuse its discretion

in denying Defendant's motion.[4]

Defendant's argument to the contrary rests on *State v. Scott*, 943 S.W.2d 730 (Mo.App.W.D.1997), and *State v. Willis*, 2 S.W.3d 801 (Mo.App.W.D.1999). Both of those cases are distinguishable.

Defendant argues the fact that the recordings were not used does not prevent a finding of fundamental unfairness because in *Scott* the appellate court found fundamental unfairness even though the trial court prevented the prosecution from using the undisclosed evidence during its case in chief. The circumstances in *Scott* were different from those in the present case. In *Scott*, the undisclosed evidence consisted of the defendant's inculpatory statements. 943 S.W.2d at 733. Without knowledge of those inculpatory statements, the defense prepared to put the defendant on the stand and that preparation included informing the jury of the defendant's prior convictions. *Id.* at 736. The defense learned of the statements on the second day of trial. *Id.* The trial court excluded the statements in the State's case in chief, but the statements still would have been permitted if the defendant testified. *Id.* The appellate court found this situation created fundamental unfairness because the timing of the disclosure resulted in a change of strategy after the jury had been informed of the defendant's prior convictions. *Id.* In the present case, in contrast, no such incriminating information was presented to the jury. Furthermore, the recordings in the present case did not involve inculpatory statements. The circumstances of the present case are not similar to those in *Scott*.

Defendant cites *Willis* for the proposition that fundamental unfairness can be found even where there was strong evidence of guilt. Again, Defendant's reliance is misplaced because the circumstances of that case are different from the circumstances in the present case. *Willis* involved evidence that was admitted at trial and that contradicted the core of the defense presented at trial. 2 S.W.3d at 808. Here, the evidence was not inculpatory and was not admitted at trial. Defendant's reliance on *Willis* is inapposite.

Defendant's second point is denied.

### *Decision*

The trial court's judgment is affirmed.

GARY W. LYNCH and DON E. BURRELL, JJ., CONCUR.

---

4. "Although true that disclosures under Rule 25 have constitutional implications, its purpose is to permit a party to prepare for trial, eliminate surprise, and afford the accused information with which to formulate a defense and meet opposing evidence." *State v. Goodwin*, 43 S.W.3d 805, 813 (Mo. banc 2001). For this reason, "[t]here is substantial authority that the prosecutor cannot be cited for a discovery violation where the defendant had knowledge of the existence of the item that the State failed to disclose." *State v. White*, 931 S.W.2d 825, 832 (Mo.App.W.D. 1996). Here, at the beginning of each phone call, a recorded voice warned Defendant the calls were subject to recording and monitoring. In fact, in at least one of the calls, Defendant reminded his family members not to discuss details of the crime because the calls were being recorded.