**STATE of Missouri, Respondent,**

v.

**Jerol Jermaine LEE, Appellant.**

WD 79319

Missouri Court of Appeals,
Western District.

OPINION FILED: JUNE 20, 2017

Colette E. Neuner, Jefferson City, MO, Counsel for Respondent.

Rosalynn Koch, Columbia, MO, Counsel for Appellant.

Before Division Two: Lisa White Hardwick, Presiding Judge, Karen King Mitchell, Judge, Anthony Rex Gabbert, Judge

Anthony Rex Gabbert, Judge

Jerol J. Lee ("Lee") appeals the circuit court's judgment entered upon a jury verdict convicting him of second degree domestic assault and three counts of endangering the welfare of a child. § 565.073 and § 568.045, RSMo 2000. Lee claims that the trial court abused its discretion in sustaining the State's objection to defense counsel's questioning of a State witness and, in so doing, violated Lee's rights to a fair trial and to confront and cross-examine witnesses. We affirm.

## Factual and Procedural Background

Lee does not challenge the sufficiency of the evidence to support his convictions. In the light most favorable to the verdict, the evidence at trial showed that on March 31, 2015, Lee appeared at his ex-girlfriend's (Adult Victim) home where she resided with her three children. Lee had previously also lived at the residence. A neighbor who lived in the other half of Adult Victim's duplex, Damian Peyton, arrived home a little before 5:00 p.m. that day. After hearing some "thuds" coming from outside, he looked out his front window and observed Lee inside his Chevy Impala arguing with several females, including Adult Victim. Peyton recognized Lee from Lee's prior visits to Adult Victim's home. Peyton then observed Lee "rev" his engine and lurch the car forward "almost like a warning sign." Adult Victim was standing approximately ten feet from Lee's vehicle at the time. Peyton then observed Lee back his car up slightly prior to accelerating forward and hitting Adult Victim with his vehicle. He then drove away "very dangerously," "very fast," and with "no regard." Peyton called 911. Peyton described to the 911 operator that the back driver's-side window of Lee's Impala was broken out. He also reported seeing at some point during the incident a younger-looking female punching Lee through the driver-side window of his car. Peyton also observed Adult Victim sweeping up glass in the vicinity of the incident.

Peyton testified that within five minutes of calling 911, Lee returned in his vehicle. Peyton called 911 again and provided a more detailed description of Lee's car, including a license plate number. Lee apparently left and then returned again, prompting Peyton to call 911 a third time. After hanging up from his third 911 call, Peyton saw the police approaching and ran outside and waved them down. As the officers exited their vehicle and began approaching Peyton on foot, Peyton heard a very loud crash and the officers got back into their vehicle. Peyton testified that Lee was "storming out again" in his vehicle but that he was stopped by the police.

Officer Terranova was one officer who responded to the scene. He testified that, after arriving at the scene, he heard a loud crash that sounded like "metal on metal." He then initiated a traffic stop of Lee's vehicle when he observed Lee attempting to leave the scene. An accompanying officer, Officer Williams, stayed with Lee while Officer Terranova went to speak with Adult Victim who was walking up the street. Present at the scene were Adult Victim, a female friend of Adult Victim, Victim's 16-year-old daughter (Child Victim A), and Adult Victim's twins—seven-year-old son (Child Victim B) and seven-year-old daughter (Child Victim C) (Victim Twins collectively). Officer Terranova testified that Adult Victim was "hysterical," "crying," "panicked," and "yelling." A video from a body camera that Officer Terranova was wearing at the time was partially played for the jury. It shows that, when Officer Terranova first approached Adult Victim, Adult Victim expressed, "My kids was in this car. He just rammed the s* * * out of my car." Child Victim A can then be seen entering the view of the camera and stating, "He hit my momma with a car. He threatened to kill us. . . ." Her dialogue was stopped by Officer Terranova who asked her to wait there while he took care of something else.

Officer Williams taped a video with his own body camera that Child Victim A had recorded on a cell phone. It showed Lee saying to Child Victim A, "You can record it, I'm going to kill one of your family members." Child Victim A also video-recorded with her cell phone an argument occurring between Adult Victim and Lee

while Adult Victim swept broken glass from around her vehicle. After arguing with Adult Victim, Lee can be observed abruptly leaving and then pulling his vehicle in front of Adult Victim's vehicle. Children inside the vehicle can be heard saying, "Mama? Mama?" followed with, "He's fixing to hit your car." A loud crash follows, the video jolts and goes black, and children can be heard screaming and crying.

Child Victim A testified that on March 31, 2015, she and her mother, two siblings, and "auntie" had just returned home from a trip to St. Louis. Lee came to the family home that day and Lee and Adult Victim got into an argument. Child Victim A recalled that Lee "stormed downstairs, upset" and slammed the front door, damaging the door knob. After leaving, Lee returned to the home and Lee and Adult Victim continued to argue. Child Victim A heard Lee threaten to shoot her grandmother in the face. At some point, Child Victim A began recording Lee's threats on a cell phone. Lee left the home and then returned a third time. Child Victim A testified that Lee "punched" a mirror on Adult Victim's car and "then, with the hammer, he busted out the window." She testified that Lee had to hit it multiple times before it broke, and then it shattered. After that "he kept trying to run [Adult Victim] over." At some point, Child Victim A jumped in front of Adult Victim to push her out of the way of Lee's vehicle; Child Victim A then went over to the driver's side of Lee's car and "was punching him through the window." Lee grabbed Child Victim A's hair and began driving, "like he was trying to drive off with me." Adult Victim then ran up to Lee's car with the hammer and "busted out" the back driver's side window. Lee then released Child Victim A, got out of the car, and began arguing with Adult Victim.

Adult Victim told Child Victim A to get her siblings into the car because they were going to leave. However, due to glass on the ground, they could not leave and Adult Victim began sweeping it up. Child Victim A got into the back seat of her mother's vehicle on the driver's side, with Child Victim C sitting directly next to her in the middle of the back seat, and Child Victim B on the other side of Child Victim C. Child Victim A then began videotaping arguing that was occurring between Lee and Adult Victim. Child Victim A testified that at some point, Lee became angry with Adult Victim, said "I'll show you," and rammed his car into Adult Victim's vehicle. Child Victim A testified that Child Victim C "almost flew through the windshield" but Child Victim A grabbed her. Child Victim A testified that she had written a letter to the court indicating that she preferred not to be involved in the case against Lee and did not want to testify.

Lee did not testify. Adult Victim, however, testified for the defense. She testified that on March 31, 2015, Lee came to her house several times. At one point he threw a hammer through the window of her vehicle. He tried to run over her twice. She later took the hammer and "busted his window out because he was snatching my daughter by the throat." She testified on direct examination that she told law enforcement the day of the incident that she broke Lee's car window with a hammer. Adult Victim also testified that she had written a letter to the court asking to have all charges against Lee dropped—that her children adored Lee and that he was a good stepfather. She testified that she brought the Victim Twins to one of Lee's preliminary hearings because they wanted to see him. She testified that she signed a statement indicating that she did not believe Lee intentionally meant to hurt Victim Twins.

On cross-examination, Adult Victim testified that she was struck by Lee's car and was pinned in-between her vehicle and his car each time he tried to run her over. She testified that she told Officer Terranova that she thought he was going to run her over and that she was "dead." She testified that her daughter, Child Victim A, intervened during this time and began hitting Lee through his car window. Lee grabbed Child Victim A's hair and released it when Adult Victim broke his car window out with a hammer. Adult Victim testified that she had not been truthful regarding the hammer when she first spoke with Officer Terranova at the scene because she was worried she might get in trouble for breaking the window out. She testified that she did not initially admit to using a hammer to break out the window and did not tell the officer that Lee used a hammer to break out her window. She also testified that Lee promised to pay for the damages to her car if she did not testify against him, which is one of reasons she filed a letter asking for charges to be dropped. She testified that Lee made other promises to prevent her from testifying and that she was scared of Lee.

The jury was given instructions for domestic assault in the second degree against Adult Victim, domestic assault in the third degree against Adult Victim, and instructions for each child victim for endangering the welfare of the child in the first degree and endangering the welfare of a child in the second degree. The jury found Lee guilty of one count of second degree domestic assault and three counts of first degree endangering the welfare of a child. Lee appeals.

### Point on Appeal

■ In Lee's sole point on appeal he contends that the trial court abused its discretion in sustaining the State's objection to the defense's questioning Officer Terranova as to whether Adult Victim told him that she had broken Lee's car window with her fist, because the ruling violated his rights to due process and a fundamentally fair trial, and to confront and cross-examine witnesses against him. Lee argues that the court erred in rejecting the testimony as hearsay because it was introduced to prove what Adult Victim told the officer so as to demonstrate her untruthfulness, not for the truth of what she said. Finding no prejudicial error, we affirm.

■ "[T]he erroneous exclusion of evidence in a criminal case creates a rebuttable presumption of prejudice." *State v. Miller*, 372 S.W.3d 455, 472 (Mo. banc 2012). This is because "[a] defendant in a criminal case has a constitutional right to present a complete defense." *Id.* "[T]his presumption is rebutted when the error is harmless beyond a reasonable doubt." *State v. Cross*, 421 S.W.3d 515, 518 (Mo. App. 2013). " 'In assessing whether the exclusion of evidence was harmless beyond a reasonable doubt, the facts and circumstances of the particular case must be examined, including the nature of the charge, the evidence presented, and the role the excluded evidence would have played in the defense's theory." ' *State v. Sanders*, 126 S.W.3d 5, 23 (Mo. App. 2003) (quoting *Felder v. State*, 88 S.W.3d 909, 914 (Mo. App. 2002)).

At trial, Officer Terranova was asked by defense counsel to comment on his observations of the damage to Lee's car. The following exchange occurred:

DEFENSE COUNSEL: We saw some pictures of Mr. Lee's vehicle, and there—one of his windows is broken out; is that correct?

OFFICER TERRANOVA: Yes, ma'am.

DEFENSE COUNSEL: And on the frame underneath that window, there's some denting on that frame?

OFFICER TERRANOVA: Yes, ma'am.

DEFENSE COUNSEL: And that denting is inconsistent with just being punched with a fist; is that correct?

OFFICER TERRANOVA: I believe so, yes, ma'am.

DEFENSE COUNSEL: But [Adult Victim] had said that she had punched—

PROSECUTION: I'm going to object, Your Honor. Hearsay.

DEFENSE COUNSEL: I'm not using it for the truth of the matter. I'm arguing the opposite. Not 'arguing' at this point, but.

THE COURT: You're arguing—

PROSECUTION: Your Honor, it doesn't matter what—she's using an out of court statement.

THE COURT: Objection will be sustained.

At defense counsel's request, counsel approached the bench and the following exchange occurred:

DEFENSE COUNSEL: So, he is saying it's an out of court statement used for the truth of the matter asserted. And I'm saying that I'm not using it for the truth of the matter asserted. She (Adult Victim) is saying that she punched, and I'm saying that is absolutely not the truth....

PROSECUTION: That's the hearsay right there.

THE COURT: How is that not hearsay?

DEFENSE COUNSEL: Because I'm not saying that it is true that she punched the window ... I'm just asking him for his observation, what he heard, was her saying that she punched it. But I don't think that's true. And I'm never going to be telling the jury that that's true.

THE COURT: But it's hearsay. Where is the exception? Here's the deal. If she testifies, and you ask her, "Did you tell the officer that you punched the window," and she says, 'No,' you can recall this guy."

PROSECUTION: That's what I was going to say.

THE COURT: Okay. So sustained at this point.

DEFENSE COUNSEL: Okay.

██  "Hearsay statements, or out-of-court statements to prove the truth of the matter asserted, generally are inadmissible." *State v. Hartman*, 488 S.W.3d 53, 57 (Mo. banc 2016). Lee argues that the trial court erred in excluding evidence that Adult Victim "lied to Officer Terranova about how she damaged Lee's car window." Lee contends that this evidence was not hearsay and "was relevant to show that [Adult Victim] had not been truthful in her statements to police." According to Lee, Adult Victim first told police that she hit Lee's car window with her fists but later told police that she hit the window with a hammer. In effect, Lee argues that he was unable to impeach Adult Victim through Officer Terranova's testimony which would have revealed Adult Victim's inconsistent statements.

██  At the time defense counsel attempted to enter this evidence, however, Adult Victim had not yet testified and there had been no testimony at all regarding Adult Victim's statements to police regarding damage to Lee's vehicle. Typically, to introduce a prior inconsistent statement for impeachment purposes, a foundation must be laid for the statement by asking during examination of the alleged declarant if the conversation occurred and if the statement was made. *Aliff v. Cody*, 26 S.W.3d 309, 318 (Mo. App. 2000). "[I]f the witness denies making the statement, then the only way to prove the witness made it is to offer extrinsic proof (a witness to the statement) on rebuttal." *Id.* at 317. This

appears to be what the court suggested to the defense when it stated that the State's objection was "sustained at this point," but that if Adult Victim testified and said that she did not tell the officer that she punched the window, the defense could recall Officer Terranova.[1] So, it is a little unclear from the record if the court denied the evidence solely on the basis of it being considered hearsay or because it also lacked a foundation for admission. Defense counsel failed to make an offer of proof which might have helped clarify the issue.

'To preserve a claim that evidence was improperly excluded, the proponent of the evidence must attempt to present the evidence at trial, and if an objection is sustained, the proponent must then make an offer of proof.' *State v. Speaks*, 298 S.W.3d 70, 85 (Mo. App. 2009). An offer of proof is necessary not only to provide the circuit court the opportunity to further consider whether the evidence should be admitted but also to provide the appellate court with the scope and effect of the excluded evidence. *State v. Tisius*, 92 S.W.3d 751, 767-68 (Mo. banc 2002). An offer of proof must establish: '(1) what the evidence will be; (2) the purpose and object of the evidence; and (3) each fact essential to establishing the admissibility of the evidence.' *Id.* at 767. Absent an offer of proof, the claim that evidence was excluded in error is only reviewable for plain error at the court's discretion. *Id.* at 768.

*State v. Jones*, 299 S.W.3d 324, 327 (Mo. App. 2009). "An offer of proof should be specific and in sufficient detail to demonstrate the admissibility of the excluded evidence." *State v. Jordan*, 937 S.W.2d 262, 264-265 (Mo. App. 1996). "Generally, an offer of proof entails questions to the witness on the stand." *State v. Seiter*, 949 S.W.2d 218, 224 (Mo. App. 1997). As there was no offer of proof made here, we may only review Lee's claim for plain error.

We find it unnecessary to conduct a plain error analysis because it is clear from the record that, even if the claim had been properly preserved and the court was found to have erred in excluding the evidence, Lee could not prevail because the exclusion was harmless beyond a reasonable doubt. Although there was no offer of proof to show exactly what Officer Terranova's testimony would have been, defense counsel's sidebar with the court indicated that Adult Victim had told police that she punched Lee's car window. Lee indicates that those statements contradicted later statements Adult Victim made to the police regarding hitting the window with a hammer and that, excluding those initial statements "deprived appellant of his right to defend against the accusations by showing [Adult Victim's] untruthfulness." Yet, Adult Victim's untruthfulness to police regarding the damage to Lee's car was later introduced into evidence when Adult Victim testified for the defense.

When cross-examining Adult Victim the State asked: "And on the scene there, you weren't honest about that hammer, about what happened with the hammer, were you?" Adult Victim replied, "Not at first." The State followed up with, "And so you lied about the hammer, in that you said

---

1. While Lee claims that this evidence should have been admitted because "the State introduced [Adult Victim's] statements to the officers" and, therefore, "the trial court should have permitted the defense questioning instead of requiring she testify first," no statements of Adult Victim regarding damage to Lee's vehicle had been introduced at the time the defense desired to impeach Adult Victim with these statements via Officer Terranova's testimony. The first time Adult Victim's statements regarding the car damage were introduced was during the State's cross-examination of Adult Victim when she appeared as a defense witness.

that—you didn't admit that you had used it to break out his window and you didn't admit that the defendant used that hammer to break out your window, is that right?" Adult Victim responded, "Yes." Hence, Adult Victim's lack of candor to the police regarding her actions in breaking Lee's car window was before the jury. "Where the excluded evidence would have been cumulative of evidence already before the jury, the exclusion of the evidence is harmless beyond a reasonable doubt." *Cross*, 421 S.W.3d at 518.[2] Lee's point on appeal is denied.

We affirm the circuit court's judgment.

All concur.

**2.** We note that the defense did not comment on the aforementioned testimony in its redirect examination of Adult Victim. Further, although the court had told the defense when sustaining the State's objection to Officer Terranova's testimony that, if Adult Victim testified the defense could recall Officer Terranova to impeach her testimony, Officer Terranova was not recalled. At that point, his testimony was unnecessary to establish that Adult Victim lied to police because Adult Victim admitted to the deception in her direct testimony. "If the witness unequivocally admits to the prior statements, further proof is unnecessary and is inadmissible because the witness, by his own admission, has impeached himself." *Ferguson v. State*, 325 S.W.3d 400, 417 n.13 (Mo. App. 2010).