

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,              )
                                )
    Plaintiff-Respondent,       )
                                )
vs.                             )          No. SD37764
                                )
BOBBY LEE MAYS,[JR.]            )          **Filed:  June 20, 2024**
                                )
    Defendant-Appellant.        )

APPEAL FROM THE CIRCUIT COURT OF SCOTT COUNTY

The Honorable R. Zac Horack, Judge

**<u>AFFIRMED</u>**

Bobby Lee Mays, Jr. ("Mays") appeals the judgment of the Circuit Court of Scott County ("trial court") convicting him of felony possession of a controlled substance, driving with a suspended license, misdemeanor possession of a controlled substance, and unlawful possession of drug paraphernalia following a jury trial.  *See* sections 579.015.2, 302.321, 579.015.4, and 579.074.2.[1]  In one point on appeal, Mays contends the trial court abused its discretion in

---

[1] All statutory references are to RSMo 2016, including applicable statutory changes effective January 1, 2017, unless otherwise indicated.

denying his request for a continuance in violation of Rule 25.03[2] and his constitutional rights to due process of the law and a fair trial. The trial court's judgment is affirmed.

**Factual Background and Procedural History**

On December 3, 2021, police officer Daniel Johnson ("Officer Johnson") was on patrol in Sikeston, Missouri. Officer Johnson observed a vehicle traveling without illuminated headlights or taillights, even though it was dark outside. Officer Johnson pulled the vehicle over for a traffic stop.

Mays was in the driver's seat of the vehicle. As Officer Johnson approached the vehicle, Mays stated that his driver's license was suspended. Officer Johnson returned to his patrol vehicle to verify that Mays's driver's license was, in fact, suspended. The other officer on duty in Sikeston that evening, Jordan Cliff ("Officer Cliff"), arrived to assist Officer Johnson. Officer Johnson confirmed that Mays's driver's license was suspended. Officer Cliff had Mays exit the vehicle and placed him under arrest. Officer Cliff then searched Mays's person incident to his arrest.

During his search of Mays's person, Officer Cliff felt a "knot and kind of bulge" in Mays's right front pocket. Mays stated that it was a dollar bill. Officer Cliff removed the dollar bill; the bill was folded and "crunchy." A white crystal-like substance was folded in the dollar bill. Officer Cliff believed the substance to be methamphetamine. Lab testing at the Missouri State Highway Patrol confirmed the dollar bill contained "0.28, plus or minus 0.05" grams of methamphetamine.

Officers Johnson and Cliff placed Mays in Officer Johnson's patrol car. Officer Cliff removed the passenger from the vehicle and searched the vehicle. The officers observed a long

---

[2] All rule references are to Missouri Court Rules (2024).

glass pipe, with white residue on its inside and "burnt on one end in the bulb" of the pipe, in the rear floorboard behind the passenger seat. Officer Cliff stated that in his experience the glass pipe is an instrument used to ingest narcotics, specifically crystal methamphetamine. The officers also observed marijuana scattered across the backseat of the vehicle. Officer Johnson collected the glass pipe and marijuana.

Mays was charged by amended information with felony possession of a controlled substance, driving with a suspended license, misdemeanor possession of a controlled substance, and unlawful possession of drug paraphernalia. Prior to trial, counsel for Mays ("defense counsel") requested discovery from the State under Rule 25.03. Defense counsel requested, in part, any "video, electronic communications and electronic data that relate to the offense for which [Mays] is charged"; any "video, electronic communications, electronic data . . . that the [S]tate intends to introduce into evidence at . . . trial"; and any "electronic surveillance . . . to which [Mays] was a party . . . relating to the offense charged." The State requested any and all digital evidence, including photographs, interviews, audio recordings, and anything else related to Mays's case, from the Sikeston Police Department. The department provided the State with a copy of a video from a body camera (sometimes referred to herein as a "body cam") worn by Officer Johnson during his encounter with Mays on December 3, 2021, but no other body cam videos. The State provided Officer Johnson's body cam video to defense counsel.

The day before trial, the State asked Officer Johnson and Officer Cliff to review the footage from Officer Johnson's body cam to refresh their recollections before testifying at trial. The morning of trial, Officer Cliff informed the State that he had not reviewed Officer Johnson's body cam video because "he watched his own body cam." The State was unaware Officer Cliff had a body cam or that Officer Cliff had body cam footage of his interaction with Mays. The

3

State immediately procured a copy of Officer Cliff's body cam and provided it to defense counsel by downloading it on defense counsel's computer before the State reviewed the video footage.

Before the jury was seated, defense counsel moved to exclude Officer Cliff's body camera video from being offered into evidence stating:

> [Defense Counsel:] . . . [T]his morning I did ask [the State] if . . . Officer Cliff had body cam. [The State] did check. It was not provided. It was not on the evidence list within the police report provided to the State, which the State did, in fact, provide to me. So, Judge, at this time, because we have not been able to review that body cam footage and, in fact, we did not know it existed until just minutes ago, we would motion to exclude. However, there is a Missouri Supreme Court case, Judge, *State v. Zuroweste*. I just want to bring it to the Court's attention it says, actually, the appropriate remedy, instead of exclusion, is a continuance in this matter. I can give you the cite.
>
> THE COURT: Give me the cite.
>
> [Defense Counsel:] 570 S.W.3d 51. And, Judge, I am going to throw this in here, not necessarily to be mean-spirited, but that's walking close to a *Brady*.

The trial court determined the body cam video was surprise evidence stating:

> To the extent that the State was not made aware, there was no way the State could have known, to the extent that in the written reports it was not listed or itemized as a separate, available piece of evidence, when another body cam footage was, I believe that this is truly a surprise piece of evidence.

The State, in response to the trial court's question of whether it wanted to use the body cam video in the first place, responded:

> Your Honor, at this point I am willing to not use it, to my own detriment. Having not reviewed it at all, I don't know what it contains. I know what Officer Cliff tells me it contains, and I believe it be [sic] beneficial to the State and normally would want to produce that.

After considering the State's position and reading the case cited by defense counsel, the trial court issued its ruling stating:

So -- so I'm -- I mean, I'm prepared to -- to, you know, with the State acknowledging that it does not intend to use this as substantive evidence to obtain a conviction against [Mays], I think the due process issues are limited to the extent the defense is allowed somewhat -- a couple of questions for impeachment on its nonproduction of the witness. So, at this time, the Court orders exclusion of the body cam worn by Officer Jordan Cliff as substantiative [sic] use evidence for the State. However, should [Mays] find it, after review or consideration, appropriate to use it for any, you know, exculpatory matters or whatnot, it is free to use that as it chooses. However, I think at that point it then opens the door to whatever else is on the video.

The trial court further stated:

So I think I'm -- I'm giving both sides a little bit here, because I don't believe the State in any way has -- has circumnavigated the rules of evidence, though it is clearly in violation of the rules of production, but not to a level that *Brady* even contemplates.

Defense counsel acknowledged the State did not have the body cam video either and believed it was a "Sikeston issue." The trial court then brought the jury venire panel in the courtroom and seated the jury before taking a break for lunch. Once the jury vacated the courtroom, defense counsel stated:

Judge, we -- the body cam footage has been provided to us by the State now. We would like to review it over lunch. We very well -- depending on what the body cam is telling us, may very well motion the Court for the continuance under *Zuroweste*. But I would like to review that body cam footage and make sure that the client sees it as well.

The State informed the trial court it also planned to review the video "not knowing what it contains." Mays did not formally move for a continuance. The trial court then informed the parties:

THE COURT: . . . [B]y way of excluding it from the State's use, I don't believe that we are, you know, experiencing an abuse of this Court's discretion to proceed with trial today, and granting a continuance is not something, at this point, I'm -- I'm willing to do on that basis. But the record has been made.

. . . .

[Mays]: So there won't be a continuance?

5

THE COURT: No continuance for today. No, I plan on proceeding unless something fortuitous comes up here in the next, you know, 30 minutes or so.

The trial court then addressed Mays and explained:

I don't believe that the State has abused its responsibilities, even though this is a, per se, discovery rule violation, okay? Your attorney wants to ask for a continuance today. I find that I am not bound by a decision telling me I have to do that, and, in exercising discretion, I want to get this over with for you as quickly as possible.

When the parties returned from their lunch break, defense counsel informed the trial court Mays may want to enter a plea, but after further discussions, no plea was entered and the jury trial proceeded.

At conclusion of the trial, the jury found Mays guilty of the class D felony of possession of a controlled substance, the class D misdemeanor of possession of a controlled substance, the class A misdemeanor of driving with a suspended license, and the class D misdemeanor of unlawful possession of drug paraphernalia. The trial court sentenced Mays to eight years' imprisonment for possession of a controlled substance, a year in jail for driving with a suspended license, and a $500 fine on each of the remaining misdemeanor charges. This timely appeal followed.

**Point on Appeal**

Mays's only point on appeal claims the trial court abused its discretion in denying his request for a continuance after the State failed to disclose Officer Cliff's body camera video in discovery. Mays asserts the discovery violation, which all parties and the trial court agreed constituted a violation, resulted in fundamental unfairness in that it denied him the opportunity to review the evidence for exculpatory or impeachment evidence or to "possibly decide" to plead guilty. Mays's point is without merit because the trial court record does not support Mays's claim in that he asked for the body cam video to be excluded from evidence and did not formally

6

request a continuance, he reviewed the evidence before opening statements occurred, and ultimately decided not to plead guilty after conferring with the trial court regarding that possibility.

*Standard of Review*

The purpose of discovery rules is to help eliminate surprise and provide each party an opportunity to prepare for trial. *State v. Tisius*, 92 S.W.3d 751, 762 (Mo. banc 2002). "Trial courts have discretion to determine whether a discovery rule has been violated . . . and to fashion an appropriate remedy in the event of a violation[.]" *State v. Cross*, 421 S.W.3d 515, 520 (Mo. App. S.D. 2013) (citing *State v. Willis*, 2 S.W.3d 801, 803 (Mo. App. W.D. 1999) and *State v. Jamison*, 163 S.W.3d 552, 557 (Mo. App. E.D. 2005)). "When a party fails to comply with a discovery rule, the trial court may order disclosure of material and information, grant a continuance, exclude evidence or enter such orders it deems just given the situation." *State v. Lawrence*, 569 S.W.3d 545, 549 (Mo. App. S.D. 2019) (quoting *State v. Miller*, 935 S.W.2d 618, 623 (Mo. App. W.D. 1996)); *see also* Rule 25.18. "In reviewing criminal discovery claims, this Court will overturn the trial court only if it appears that the trial court abused its discretion." *State v. Zuroweste*, 570 S.W.3d 51, 56 (Mo. banc 2019) (quoting *State v. Taylor*, 944 S.W.2d 925, 932 (Mo. banc 1997)). "Even when there is a discovery violation, '[a] trial court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant.'" *Id.* (quoting *State v. Taylor*, 298 S.W.3d 482, 502 (Mo. banc 2009)). "Fundamental unfairness turns on whether there was a reasonable likelihood that an earlier disclosure of the requested evidence would have affected the result of the trial." *Jamison*, 163 S.W.3d at 557.

7

*Analysis*

In this case, Mays has not shown a reasonable likelihood that an earlier disclosure of Officer Cliff's body cam video would have affected the result of his trial because the trial court excluded the evidence from being used at trial as requested by Mays to remedy the discovery violation. Both parties and the trial court agreed that a discovery violation occurred. Even though the State requested the Sikeston Police Department provide it with any and all digital evidence related to Mays's case, the department failed to provide Officer Cliff's body cam video to the State, which resulted in the State's failure to provide the video to Mays in discovery. However, once the State learned of the video, it disclosed the video to Mays immediately by downloading it on defense counsel's computer before the State viewed the video. Defense counsel then stated: "[B]because we have not been able to review that body cam footage and, in fact, we did not know it existed until just minutes ago, we would motion to exclude." Upon the State's agreement, the trial court granted Mays's motion and excluded the video from evidence at trial, but left open the opportunity for Mays, after reviewing the video, to use it at trial as he chose if he found it appropriate to use for exculpatory matters.

Moreover, Mays's point on appeal claims the trial court erred by not granting his request for a continuance. We do not find such a request by Mays in the trial court record. After Mays moved to exclude Officer Cliff's body cam video, he stated, "However, there is a Missouri Supreme Court case, Judge, *State v. Zuroweste*. I just want to bring it to the Court's attention it says, actually, the appropriate remedy, instead of exclusion, is a continuance in this matter." Defense counsel then stated that she *might* ask for a continuance after reviewing the video during lunch. The trial court responded that it would not grant a continuance; that a continuance was proper if the State was going to use the evidence; and that it had ordered the video evidence

excluded from the State's use as Mays requested. Mays did not move for a continuance of trial after reviewing the video. A trial court is afforded discretion in fashioning the appropriate relief for a discovery violation. *Cross*, 421 S.W.3d at 520. The appropriateness of a remedy is dependent on the particular facts of each case. *Lawrence*, 569 S.W.3d at 551. Exclusion of evidence is a more drastic remedy than granting a continuance. *Zuroweste*, 570 S.W.3d at 60.

Moreover, Mays is not entitled to relief here because the nondisclosure did not result in fundamental unfairness and the trial court awarded him the very relief he asked for. "Courts will not find fundamental unfairness where the State makes limited use of the undisclosed material and where there is strong evidence of guilt." *Cross*, 421 S.W.3d 520. The State was precluded from using the evidence at trial and did not use it in any way. Furthermore, there was strong evidence of guilt, including Mays's own admission at the time of the traffic stop that "he was suspended" and his later admission the day of trial in open court without the jury present that was overheard by officers in the courtroom. Specifically, Detective Eric Dunn with the Scott County Sheriff's Office who testified at trial that Mays made the statement in open court that "he was not a seller, he was a user, and he did have the methamphetamine on him that night." The trial court did not abuse its discretion in fashioning the sanction of excluding the late-disclosed evidence as Mays requested it to do.

Mays's argument to the contrary rests on his interpretation of the Supreme Court of Missouri's holding in *Zuroweste* – that the trial court was required to continue the matter due to a discovery violation. We do not read *Zuroweste*'s holding the same way. *Zuroweste* involved the disclosure four days before trial of a recorded telephone call made by the defendant from jail. *Zuroweste*, 570 S.W.3d at 55. Like Mays, the defendant in *Zuroweste* filed a pretrial motion to exclude the recorded telephone call, but did not file a motion for continuance. *Id.* But, unlike

9

Mays, the trial court in *Zuroweste* overruled the motion to exclude. *Id.* On appeal, the Court held the trial court's ruling did not result in fundamental unfairness to the defendant. *Id.* at 65. The Court held, based on the particular facts of the case, a continuance would have been the appropriate remedy had the defendant requested it; defendant bore the burden to "demonstrate the discovery violation resulted in fundamental unfairness warranting exclusion of the evidence rather than another sanction or remedy"; and the defendant failed to request a continuance, instead seeking only to exclude the evidence. *Id.* at 62-63 (internal quotations and citation omitted).

Unlike the ruling in *Zuroweste*, this Court *granted* Mays's motion to exclude. As the *Zuroweste* Court stated, exclusion of evidence is a more drastic remedy than granting a continuance. *Id.* at 60. To the extent Mays contends the grant of a more drastic remedy, the very remedy he requested, prejudiced him, he fails to explain how a continuance would have changed his trial strategy, even had he requested one. Instead, Mays asserts that the evidence *may have* or *might have* changed his decision to plead not guilty and *may have* or *might have* contradicted or impeached Officer Cliff's testimony or contained exculpatory evidence. These arguments ignore the fact that Mays did, in fact, get a chance to review the video before opening statements and that he did not decide to plead guilty after discussing pleading guilty with the trial court. No fundamental unfairness resulted from the State's failure to disclose the body cam video earlier, and the trial court did not abuse its discretion in imposing the harshest sanction as Mays requested, excluding the evidence, instead of granting a continuance of trial, which Mays never formally requested. Point I is denied.

## Conclusion

The trial court's judgment convicting Mays is affirmed.

10

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

JACK A. L. GOODMAN, C.J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS