

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,        )
       )
       Respondent,        )
       )
v.        )        No. SC97229
       )
DANIELLE ANN ZUROWESTE,        )
       )
       Appellant.        )

*Opinion issued April 2, 2019*

## APPEAL FROM THE CIRCUIT COURT OF WARREN COUNTY
### The Honorable Wesley Dalton, Circuit Judge

Danielle Ann Zuroweste appeals a judgment of conviction for possession of a controlled substance. A jury found Zuroweste guilty of possession of methamphetamine, and the circuit court sentenced her to prison pursuant to the 120-day institutional treatment program. On appeal, Zuroweste argues the circuit court erred by admitting into evidence a recorded statement Zuroweste made because the State did not disclose the recording until four days before trial. Although the State clearly violated the rules of discovery by failing to timely disclose the recorded statement, the judgment is affirmed because the discovery violation did not warrant the drastic sanction of excluding the evidence as Zuroweste requested when a continuance would have remedied any alleged prejudice to Zuroweste.

**Factual and Procedural Background**

On September 21, 2015, a police officer responded to a reported domestic matter. After speaking with several individuals at the scene, the officer began searching for Zuroweste. The officer observed a vehicle matching the description of Zuroweste's vehicle and conducted a traffic stop. During the stop, the officer noticed a plastic baggy, which appeared to contain a white residue consistent with the appearance of illegal drugs.[1] The officer recovered the plastic baggy and also seized two glass pipes containing burnt marijuana. The officer arrested Zuroweste and transported her to the Warren County jail. Zuroweste was subsequently charged with possession of a controlled substance and drug paraphernalia.

While she was in jail,[2] Zuroweste made a series of telephone calls. During one of these calls, placed September 26, 2015, Zuroweste stated, "I've learned my lesson," "I know it's wrong and I shouldn't be doing it," and "I am never going to do it again."

Following a waiver of preliminary hearing, Zuroweste was charged by information with one count of felony possession of a controlled substance and one count of possession of drug paraphernalia, a misdemeanor. On June 10, 2016, following the filing of the information, Zuroweste filed a written request for discovery requesting, in relevant part, "Any written or recorded, statements and the substance of any oral statements made by the defendant." Zuroweste's case was set for trial November 14, 2016. Four days before the

---

[1] Laboratory testing determined the residue was methamphetamine.
[2] Zuroweste posted bond approximately two weeks after her arrest and remained free pending trial.

trial was set to begin, the State disclosed the recorded telephone call Zuroweste made September 26, 2015.[3] After the State informed Zuroweste of its intent to use the recorded telephone call as evidence at trial, Zuroweste objected to the late disclosure. The State claimed it did not know about the call until that day and it delivered a copy of the recording to Zuroweste as soon as it was discovered. The State justified the late disclosure, arguing it has to "juggle the trial docket," it doesn't always know "what case is going [to trial] sometimes until days before," and "the State [has] to prep multiple cases for trial, but [doesn't] know which one's going until days before."

Zuroweste filed a pretrial motion to exclude the recorded telephone call from evidence as a sanction for the alleged discovery violation. Despite arguing the late disclosure prejudiced her because she did not have time to investigate the call and offer evidence to contradict the State's evidence, Zuroweste did not seek a continuance as a remedy to the discovery violation in her pretrial motion. The circuit court overruled her motion to exclude the evidence. Immediately prior to trial, Zuroweste pleaded guilty to the misdemeanor possession of drug paraphernalia charge.[4] On the morning of trial, the circuit court asked Zuroweste if she was sure she wanted to reject the State's plea offer for the felony possession charge, which contemplated dismissing the felony charge pending successful completion of a drug court program. Zuroweste confirmed she wished to reject

---

[3] The State did not disclose the recordings of the other telephone calls Zuroweste made while she was detained in the Warren County jail. The State contended there were no exonerating statements contained in the other calls but nonetheless offered to provide recordings of the other calls to Zuroweste.

[4] Zuroweste was sentenced to 90 days in jail for this offense.

the State's offer, explaining she could not commit to the drug court program due to the distance between the court and her residence. Zuroweste's case proceeded to trial.

During the trial, the State introduced the September 26 telephone call, over Zuroweste's objection, as evidence in support of its theory that Zuroweste knew the baggy contained methamphetamine, equating the recorded statements with an admission of guilt. During closing arguments, the State encouraged the jury to play the recorded telephone call during its deliberations, and the jury did request the recording during deliberations. The jury returned a verdict finding Zuroweste guilty of felony possession of methamphetamine. Zuroweste moved for a new trial, again citing the State's alleged discovery violation. The circuit court overruled her motion and entered judgment on the jury's verdict. The circuit court sentenced Zuroweste to seven years in prison pursuant to the 120-day institutional treatment program authorized by § 559.115.[5] Zuroweste appealed, and this Court granted transfer after an opinion by the court of appeals pursuant to Rule 84.04.

## Standard of Review

"In reviewing criminal discovery claims, this Court will overturn the trial court only if it appears that the trial court abused its discretion." *State v. Taylor*, 944 S.W.2d 925, 932 (Mo. banc 1997). Even when there is a discovery violation, "[a] trial court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant." *State v. Taylor*, 298 S.W.3d 482, 502

---

[5] All statutory references are to RSMo, 2000, as amended, unless otherwise specified.

(Mo. banc 2009); *see also State v. Edwards*, 116 S.W.3d 511, 534 (Mo. banc 2003); *State v. Royal*, 610 S.W.2d 946, 951 (Mo. banc 1981).

## Analysis

Through its rules, this Court seeks to facilitate and promote discovery in criminal cases. The rules of criminal discovery exist "to eliminate surprise by allowing both sides to know the witnesses and evidence to be introduced at trial." *State v. Walkup*, 220 S.W.3d 748, 753 (Mo. banc 2007) (internal brackets and quotation omitted). "The Rules of criminal discovery are not mere etiquette nor is compliance discretionary." *State v. Whitfield*, 837 S.W.2d 503, 507 (Mo. banc 1992) (internal quotation omitted). The discovery rules exist to "aid the truth-finding aspect of the legal system." *Id.* at 508. The rules also "foster informed pleas, expedited trials, a minimum of surprise, and the opportunity for effective cross-examination." *State v. Wells¸* 639 S.W.2d 563, 566 (Mo. banc 1982).

On appeal, Zuroweste claims the circuit court erred in admitting the recorded telephone call she placed September 26th because the call was untimely disclosed in violation of the rules of discovery, and the late disclosure prevented her from adequately preparing for trial. Although this Court agrees the State violated the rules of discovery, the circuit court did not abuse its discretion admitting the recorded telephone call at trial because any unfairness resulting from the late disclosure could have been remedied by a continuance, which Zuroweste never requested. For this reason, the admission of the evidence did not result in fundamental unfairness to Zuroweste warranting reversal of her conviction.

**A.  The untimely disclosure of the recorded telephone call was a discovery violation.**

The State labored both in its brief and at oral argument to convince this Court its late response to Zuroweste's discovery request did not constitute a discovery violation. The State's arguments ring hollow, however, as there can be no question there was a discovery violation in this case.

The State first argues it did not violate the rules of discovery because the call was not in its possession.  Both the plain text of Rule 25.03[6] and Missouri cases expose the weakness in the State's position.  Rule 25.03 sets out the mandatory disclosures the State is required to make when it receives a request for discovery in a criminal case.  It states, in pertinent part, "[T]he state shall, upon written request of defendant's counsel, disclose to defendant's counsel such part or all of the following material and information **within its possession or control** … [a]ny written or recorded statements and the substance of any oral statements made by the defendant."  Rule 25.03(A)(2) (emphasis added).  For the purpose of this rule and subdivision, "the state" is limited to "the prosecutor as a representative of the State of Missouri, and not to any other state official or entity." *State v. Johnson*, 513 S.W.3d 360, 366 n.3 (Mo. App. 2016).  Therefore, because the recorded telephone calls Zuroweste made in the Warren County jail were not in the prosecutor's possession, but instead were in the possession of the Warren County sheriff's department,[7] the State is correct that Rule 25.03(A) did not obligate disclosure by the prosecutor in this

---

[6]  Rule 25.03 was amended December 19, 2017, effective July 1, 2018.  Zuroweste's trial took place in November 2016, so rule references are to the rules in effect in 2016 unless otherwise stated.

[7]  The Warren County jail is operated by the Warren County sheriff's department.

6

case. But the scope of information and material subject to mandatory disclosure under Rule 25.03 encompasses more than information in the prosecutor's possession.

Although Rule 25.03(A) did not require disclosure, Rule 25.03(C) obligated the State to exercise diligence and good faith to retrieve and disclose the recorded telephone calls Zuroweste made while she was detained in the Warren County jail. The State contends the rules of criminal discovery "[do] not impose an affirmative duty on the State" to search for and retrieve information from the Warren County jail, but this position is inconsistent with the language of Rule 25.03(C) and exhibits a disingenuous reading of this Court's relevant cases. Rule 25.03(C) clearly states:

> If the defense in its request designates material or information which would be discoverable under this Rule if in the possession or control of the state but which is, in fact, **in the possession or control of other governmental personnel**, the state shall use diligence and make good faith efforts to cause such material to be made available to the defense counsel.

(Emphasis added). Zuroweste's written discovery request sought "[a]ny written or recorded statements … made by the defendant." Pursuant to Rule 25.03(A)(2), this specific request would have obligated the State to disclose the recorded telephone calls Zuroweste made from the Warren County jail if the recordings were in the prosecutor's possession. Therefore, because the recordings would have been "discoverable under this Rule" if they were in the prosecutor's possession, Rule 25.03(C) required the State to "use diligence and make good faith efforts" to cause the recordings to be made available to Zuroweste if the recordings were "in the possession or control of other governmental personnel." Rule 25.03(C). The recorded telephone calls made by Zuroweste were, in fact, in the possession and control of the Warren County sheriff's department, another government entity. Rule

7

25.03(C) required the State, therefore, to use diligence and make a good faith effort to make the recordings available to Zuroweste. Furthermore, this Court has unequivocally held Rule 25.03 "imposes an affirmative requirement of diligence and good faith on the state to locate records **not only in its own possession or control but also in the control of other governmental personnel**." *Merriweather v. State*, 294 S.W.3d 52, 55 (Mo. banc 2009) (emphasis added). It is beyond debate that Rule 25.03(C) and this Court's decision in *Merriweather* required the State to use diligence and make a good faith effort to seek out and retrieve the recorded telephone calls from the Warren County jail and disclose the calls to Zuroweste.

The facts in *Merriweather* further expose the infirmity of the State's position. In *Merriweather*, this Court held Rule 25.03(C) obligated the State to disclose prior criminal convictions of a witness called by the State even though the convictions in question "were Illinois records, but Missouri officials had access to them . " *Id.* at 56. Put another way, Rule 25.03(C) placed an affirmative duty on the State to retrieve and disclose evidence from **another state** because the State had the ability to access the evidence.

Not only is the Warren County sheriff's department a Missouri government entity, but the Warren County prosecuting attorney and the Warren County sheriff's department are located in the same building. If this Court found diligence and good faith required the State to discover and disclose criminal records originating from another state government, then the diligence and good faith requirement of Rule 25.03(C) would also require the State to discover and disclose records maintained by another Missouri government entity located in the same building as the prosecutor. Furthermore, the State cannot justifiably claim

8

discovering and disclosing recorded telephone calls Zuroweste made at the Warren County jail goes beyond the diligence and good faith requirement of Rule 25.03(C) because the use of recorded jailhouse telephone calls has become commonplace in criminal prosecutions and the State frequently uses such recordings as evidence in criminal trials. Therefore, the State, utilizing diligence and a good faith effort, should have discovered and disclosed the recorded telephone calls Zuroweste made from the Warren County sheriff's department as required by Rule 25.03(C).

The State attempts to distinguish *Merriweather* from this case because the discovery at issue in *Merriweather* was exclusively available to the State through online criminal history databases, whereas Zuroweste could have requested and received copies of her recorded jail calls. But this distinction is immaterial because Rule 25.03 requires disclosure of any recorded statements the defendant made if those statements are in the possession or control of other governmental personnel. Whether Zuroweste had access to the recordings is irrelevant to the State's duty to discover and disclose the recordings. Moreover, the State's attempt to pass responsibility for locating the call onto Zuroweste ignores the fundamental nature of a criminal prosecution. The State wields enormous power during a criminal prosecution, and with great power comes great responsibility. If the State seeks to deprive a defendant of liberty, the State must spare no effort to fulfill its obligations under this Court's discovery rules.

In a final attempt to convince this Court it did not commit a discovery violation, the State argues it disclosed the recording as soon as the State came into possession of the call, but a review of the disclosure timeline and the relevant rule of discovery establishes the

State's disclosure was untimely. Rule 25.02 states, in pertinent part, "Requests [for discovery] shall be answered within ten days after service of the request."[8] "This duty to disclose is not discretionary and is continuing." *State v. Bucklew*, 973 S.W.2d 83, 92 (Mo. banc 1998). The relevant telephone call was recorded September 26, 2015. Zuroweste filed her written request for discovery June 10, 2016. The State was obligated under Rule 25.03(C) to use diligence and good faith efforts to locate the recordings from the Warren County sheriff's department and disclose the recordings to Zuroweste on or before June 20, 2016, as required by Rule 25.02.[9]

Although the State provided Zuroweste with a copy of the telephone call immediately after coming into possession of the recording, the State waited until the final days leading to trial before giving any thought to locating and disclosing the call. The State does not claim locating the recorded telephone calls was difficult,[10] and, as stated above, the use of jailhouse telephone calls in criminal trials has become commonplace. The State, therefore, has no excuse for not discovering and disclosing all the recorded telephone calls

---

[8] The 2018 amendment to Rule 25.02 requires a response within 14 days after being served with the defendant's request for discovery.

[9] The only justification for not disclosing within the 10-day period is extension of the deadline by the circuit court. *See* Rule 25.02 ("The court may enlarge or shorten the times herein specified.") The State did not seek nor did the court extend the 10-day deadline in this case.

[10] If the State had sought the recorded telephone calls from the Warren County sheriff's department and the department refused to provide them or otherwise failed to cooperate with the State's efforts to obtain the recordings, then the State could properly claim it used diligence and good faith efforts to discover and disclose the records, but there is no record such circumstances occurred. *See State v. Doney*, 622 S.W.2d 227, 231 (Mo. App. 1981) (finding no discovery violation when prosecutor requested tape recording from police department, but police department claimed, contrary to defendant's testimony, recording did not exist).

within 10 days as required by Rule 25.02. Sitting idly on Zuroweste's discovery request for six months and then waiting until mere days before trial to locate and disclose discoverable material containing recorded statements made by Zuroweste is the antithesis of the diligence and good faith requirement of Rule 25.03(C) and the 10-day deadline mandated by Rule 25.02.

The prosecutor inexcusably tried to pass the blame for the late disclosure onto the defense bar by accusing defendants of engaging in a "shell game" through which defendants prevent the State from knowing which defendants will take their case to trial and which defendants will accept plea agreement offers. This Court, however, has no sympathy for the State's position because the State's job is to be prepared to try every case it brings and to assume each case will be tried to verdict.

Accordingly, the State's failure to timely retrieve and disclose the September 26 telephone call from the Warren County jail undoubtedly constituted a discovery violation. The only remaining question is what sanction or remedy, if any, the State's discovery violation warranted.

**B. The discovery violation did not warrant exclusion of the recorded telephone call.**

Rule 25.18 sets forth the sanctions and remedies the circuit court may consider and impose for discovery violations occurring in criminal cases. The rule states in pertinent part:

> If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule …, the court **may** order such party to make disclosure of material and information not previously disclosed, **grant a continuance, exclude such**

11

> **evidence, or enter such other order as it deems just under the circumstances**.

Rule 25.18 (emphasis added). This rule gives circuit courts significant discretion, and a circuit court's decision will be disturbed "only upon a very strong showing that the court abused its discretion and prejudice resulted." *Edwards*, 116 S.W.3d at 535. Nonetheless, the circuit court's discretion is not absolute. The circuit court must ensure the sanction imposed or remedy applied, if any, is proportional to the violation and the resulting prejudice. "When the trial court declines to impose a sanction, [this Court] must determine whether the State's violation resulted in fundamental unfairness or bore a real potential for substantively altering the outcome of the trial." *State v. Johnston*, 957 S.W.2d 734, 750 (Mo. banc 1997). "Fundamental unfairness occurs when the state's failure to disclose results in defendant's 'genuine surprise' and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." *State v. Tisius*, 92 S.W.3d 751, 762 (Mo. banc 2002).

In her motion for sanctions, Zuroweste sought exclusion of the jail call recording as a sanction for the State's discovery violation. Notably, Zuroweste did not request or seek a continuance as a remedial measure, even in the alternative. The exclusion of evidence is among the sanctions and remedies authorized by Rule 25.18. However, the exclusion of evidence is "a drastic remedy that should be used with the utmost of caution." *State v. Mansfield*, 637 S.W.2d 699, 703 (Mo. banc 1982), *overruled on other grounds by State v. Clark*, 652 S.W.2d 123, 127 n.4 (Mo. Banc 1983); *see also State v. Destefano*, 211 S.W.3d 173, 181 (Mo. App. 2007). As the United States Supreme Court has said in the context of

12

a Fourth Amendment violation, "for exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs" of ignoring reliable evidence and suppressing the truth. *Davis v. United States*, 564 U.S. 229, 237 (2011).

The purpose of any trial, criminal or civil, is to seek justice. A fair trial and just result may be compromised if reliable and relevant evidence is suppressed from the fact finder. Accordingly, such an extreme sanction is warranted only if supported by adequate cause and required to prevent "fundamental unfairness." *Johnston*, 957 S.W.2d at 750; *see also State v. Smothers*, 605 S.W. 2d 128, 132 (Mo. banc 1980) ("A conviction resulting from a fair trial should not be reversed for the purpose of disciplining and deterring prosecutors, particularly where the mechanism for discipline and deterrence is provided elsewhere."). For this reason, before the drastic sanction of exclusion is imposed, circuit courts must consider employing less severe remedies to address the prejudice resulting from the discovery violation and achieve fundamental fairness for all parties.

In support of her request for the exclusion of the recorded telephone call as a sanction for the State's discovery violation, Zuroweste and the dissent argue the violation involves her own inculpatory statements. Zuroweste and the dissent contend the failure to disclose a defendant's own statements is inherently prejudicial. To be sure, the State's failure to produce a defendant's own statement is a particularly concerning form of discovery violation. *See State v. Henderson*, 410 S.W.3d 760, 764 (Mo. App. 2013) (holding "[t]he State's failure to produce a statement of the accused is in a different category from failure to disclose a witness or a photograph"). "Because they carry such great weight with the jury, inculpatory statements demand disclosure, and a violation of

13

the rule of disclosure requires examination with grave suspicion." *Id*. at 765. Indeed, the State relied heavily on the jail call, equating the recorded statements with an admission of guilt. The State also repeatedly referenced the recorded telephone call during closing arguments, and the jury requested the recording during deliberations. The significant weight of Zuroweste's inculpatory statements in the recorded telephone call, however, does not create a presumption of prejudice mandating exclusion of the evidence or reversal if the evidence is not excluded. Rather, Zuroweste must demonstrate the discovery violation resulted in "fundamental unfairness" warranting exclusion of the evidence rather than another sanction or remedy. *Johnston*, 957 S.W.2d at 750.

Zuroweste argues the State's late disclosure resulted in fundamental unfairness because she did not have sufficient time to adequately prepare a defense in light of the recording. If a criminal defendant claims a late discovery disclosure prevented her from adequately investigating and preparing for trial, the appropriate remedy is a continuance, not exclusion of the evidence, unless the complaining party establishes prejudice from the delay. *See Royal*, 610 S.W.2d at 953 (finding it "strange to hear defense counsel make these claims [of insufficient time to prepare] while not seeking a continuance"); *State v. Ivy*, 531 S.W.3d 108, 119(Mo. App. 2017) (observing a defendant could have "potentially removed the prejudice" from a late disclosure by asking for a continuance). Moreover, a defendant's "[f]ailure to seek a continuance leads to the inference that the late endorsement was not damaging to the complaining party." *State v. Hutchison*, 957 S.W.2d 757, 764 (Mo. banc 1997). "A defendant's failure to ask for a continuance can be properly considered by the appellate court in determining whether the trial court abused its

14

discretion," and the failure to request a continuance may also justify finding the defendant "could have requested the less-drastic remedy of a continuance as an alternative to the tape's exclusion." *State v. Bynum*, 299 S.W.3d 53, 62 (Mo. App. 2009) (internal quotation omitted). Zuroweste's failure to request a continuance must be considered when assessing the credibility of Zuroweste's claim that she did not have adequate time to prepare and whether fundamental unfairness resulted from admission of the evidence. If Zuroweste truly needed additional time to investigate the call, a continuance would have remedied her concerns. By not requesting a continuance, the credibility of her claim is shaken, and the circuit court did not abuse its discretion denying her request to exclude the evidence. Importantly, Zuroweste was out of custody and had requested several continuances during the course of this prosecution, and there is no evidence or record before the circuit court suggesting another continuance or a delay in the trial would have somehow prejudiced Zuroweste. Because a continuance would have remedied any unfairness caused by the discovery violation in this case and Zuroweste has not demonstrated prejudice by a delay in the proceedings, Zuroweste has not shown the drastic remedy of exclusion was justified over a simple continuance, and the circuit court did not abuse its discretion overruling her motion to exclude the recorded telephone call.[11]

---

[11] The dissent and Zuroweste, in her reply brief, contend the circuit court abused its discretion by not granting a continuance even though it was not specifically requested in her motion for sanctions. In the motion for sanctions, Zuroweste specifically requested exclusion of the recorded telephone call. She also requested "any such relief [the circuit court] deems necessary." The dissent and Zuroweste claim this request could properly be characterized as a request to continue Zuroweste's trial because a continuance is one of the remedies set forth in Rule 25.18. Zuroweste did not raise this argument in her opening

15

In addition, Zuroweste fails to identify exactly what she would have done differently had the State timely disclosed the recorded call. Vague and indefinite responses about how a defense strategy would have changed in light of untimely disclosed evidence is insufficient to establish prejudice. *Royal*, 610 S.W.2d at 952-53. Rather, Zuroweste must establish the late disclosure "bore a real potential for substantively altering the outcome of the trial." *Johnston*, 957 S.W.2d at 750. Zuroweste claims, with more time, she could have investigated and interviewed a person she referenced on the recorded telephone call, but she does not explain how investigating and interviewing this person potentially could have created a different result at trial. Although the State most certainly should have discovered and disclosed the recording in a timely fashion, Zuroweste has neither claimed nor demonstrated she was genuinely surprised by the recording to an extent that "prevent[ed] meaningful efforts to consider and prepare a strategy for addressing the evidence." *State v. Thompson*, 985 S.W.2d 779, 785 (Mo. banc 1999). Zuroweste does not allege she was forced to alter her trial strategy at the last minute, nor that the late disclosure "crippled" her

---

brief, so this argument is waived. *See Berry v. State*, 908 S.W.2d 682, 684 (Mo. banc 1995) ("Assignments of error set forth for the first time in the reply brief do not present issues for appellate review."); *see also Newson v. Kan. City, Mo. Sch. Dist.*, 520 S.W.3d 769, 777 n.7 (Mo. banc 2017). Nonetheless, the circuit court could have asked Zuroweste if she would agree to a continuance if the court overruled her motion to exclude the evidence of the recorded telephone call and granted a continuance of the trial based on the late disclosure at Zuroweste's request. This *sua sponte* action by the circuit court could have avoided the issue in this case and been the preferred method to address the late disclosure, but the circuit court did not abuse its discretion by not doing so. Indeed, this Court has held a circuit court did not abuse its discretion by declining to sanction the State for a discovery violation when the defendant did not specifically seek a continuance to provide more time to review evidence the State untimely disclosed. *See Royal*, 610 S.W.2d at 953.

16

defense.[12] *See Henderson*, 410 S.W.3d at 766. "Bare assertions of prejudice are not sufficient to establish fundamental unfairness and [do] not show how the trial was substantially altered." *Tisius¸* 92 S.W.3d at 762. Accordingly, by merely claiming the late disclosure deprived her of an opportunity to adequately prepare for trial, Zuroweste has not demonstrated a reasonable likelihood the State's discovery violation "affected the result of the trial."[13] *Edwards¸*116 S.W.3d at 534.

Zuroweste relies heavily on *Henderson*, 410 S.W.3d at 762 and another court of appeals case, *State v. Willis*, 2 S.W.3d 801 (Mo. App. 1999), for her claim that the State's late disclosure resulted in fundamental unfairness, but those cases can be distinguished from the present action. In *Henderson*, the defendant was charged with unlawfully possessing a firearm. 410 S.W.3d at 762. The defendant's theory of defense was he did not live at the address where the firearm was recovered. *Id* at 763. However, the defendant listed the address where the firearm was found as his address on the booking form he completed after his arrest. *Id.* Although the defendant submitted a written discovery

---

[12] This suggests Zuroweste did not need additional time to prepare an alternate defense strategy in light of the recording, which may explain why Zuroweste did not seek a continuance as a remedy for the discovery violation. *See Hutchison*, 957 S.W.2d at 764 ("Failure to seek a continuance leads to the inference that the late endorsement was not damaging to the complaining party.").

[13] The dissent focuses heavily on the fact that the State failed to disclose not only the recorded telephone call used at trial but also the recordings of other jail calls Zuroweste made. But this discovery violation also could have been remedied by a continuance. If Zuroweste needed additional time to review and respond to the additional calls before trial, she merely needed to make such request as she had done previously in this case. Because a continuance could have easily remedied any alleged prejudice from the late disclosure of one or more of the recorded calls, the ultimate sanction of exclusion was unwarranted.

request, the State waited until after trial had begun to disclose the booking form. *Id.* The court of appeals found this resulted in fundamental unfairness, noting:

> the booking form was the State's most damning documentary evidence that [the defendant] actually lived at the residence where police found the rifle. By the time the State disclosed the booking form, the defendant had already committed in his opening statement to the jury to the theory of defense that he did not live at the residence where police found the rifle … The timing crippled the defendant's theory of defense and left defense counsel with no time to investigate and employ another strategy.

*Id.* at 766. Untimely disclosure of the booking form, therefore, resulted in fundamental unfairness not because the defendant had merely formulated a strategy prior to trial that did not contemplate the booking form, but because he had already presented the theory to the jury when the State made the late disclosure, so a continuance could not have remedied the discovery violation.

Similarly, in *Willis*, the State waited until the day the trial began before disclosing inculpatory letters the defendant wrote directly contradicting his chosen theory of defense. 2 S.W.3d at 803. The court of appeals held this late disclosure resulted in fundamental unfairness warranting exclusion because it did not give the defendant enough time to adjust his trial strategy. *Id.* at 807. In contrast, the State, in this case, disclosed the recorded call four days before trial started, not on the day the trial commenced. Four days was enough time for Zuroweste, at the very least, to determine if she needed additional time to investigate and prepare for trial in light of the late disclosure and request a continuance to seek more time, if necessary, to properly respond to the late disclosure of the telephone call.

Zuroweste also claims the late disclosure resulted in fundamental unfairness because it left her with insufficient time to decide whether to plead guilty or to accept the State's plea offer. But again, Zuroweste failed to request a continuance. If she needed additional time to consider the State's offer in light of the late disclosure, she had four days before the start of the trial to simply request a continuance. Moreover, Zuroweste fails to explain how she was genuinely surprised by the disclosure or how having more time between disclosure of the recording and trial would have influenced her decision on whether to plead guilty. *See Tisius*, 92 S.W.3d at 762. Although Zuroweste claims timely disclosure would have given her more time to consider the effect the recording would have on her trial, "extremely general responses" are insufficient to show prejudice. *Royal*, 610 S.W.2d at 953.

Furthermore, Zuroweste still had sufficient time after receiving the recording from the State to contemplate the State's plea offer, and, in any event, there is no evidence showing the recorded telephone call influenced her decision to accept or reject the plea offer. Zuroweste was presented with a chance to accept the State's plea offer as late as the morning of trial, but she rejected the offer because she was hesitant to commit to a drug court program due to the distance between the court and her residence. This demonstrates Zuroweste was not contemplating the weight of the State's evidence or the effect of the recording on the outcome of her trial when she rejected the State's plea offer. Instead, she rejected the offer on logistical grounds unrelated to the State's evidence or the recorded telephone call. The late disclosure, therefore, had no bearing on Zuroweste's decision to accept or reject the State's plea offer. Accordingly, the State's discovery violation was not

19

fundamentally unfair because Zuroweste has not demonstrated how timely disclosure of the recorded call would have reduced her reluctance to accept the State's plea offer and enter a drug court program.

Finally, Zuroweste characterizes the State's late disclosure of the recorded call as a willful discovery violation and therefore contends exclusion is warranted pursuant to Rule 25.18. Rule 25.18 provides in pertinent part, "Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto **may** subject counsel to appropriate sanctions by the court." (Emphasis added). While clearly the State's choice to delay seeking and obtaining the jail calls until it determined Zuroweste's case was proceeding to trial was intentional, there was no evidence showing the State's decision was made in bad faith or to gain a strategic advantage. Missouri courts have emphasized the distinction between discovery violations made willfully in bad faith and those occurring due to poor discovery practices and trial preparation. In *Johnson*, the court of appeals reversed a conviction due to a discovery violation but only after finding the State "intentionally withheld the recordings from the defense **to gain a strategic advantage**." 513 S.W.3d at 365 (emphasis added).[14] Clearly, if the State willfully violated the discovery rules to gain

---

[14] Zuroweste and the dissent rely on *Johnson* to support their positions that the circuit court abused its discretion by failing to exclude the jail call recordings. Although the dissent characterizes *Johnson* as "eerily similar," the prosecutor in *Johnson* was found to have acted in bad faith. In contrast, Zuroweste made no allegations of bad faith, making *Johnson* easily distinguishable. The dissent claims there is no difference between late disclosure of evidence with the intent to sabotage the defendant's case and late disclosure caused by poor discovery practices. The distinction, however, is germane to the character of the prosecutor's malicious intent in *Johnson*. Committing a discovery violation with the intent to harm a defendant is categorically more culpable than committing a discovery violation

a strategic advantage or because of another bad faith motive, exclusion of relevant evidence would be the minimum sanction warranted. *See State ex rel. Jackson Cnty. Prosecuting Attorney v. Prokes*, 363 S.W.3d 71, 85 (Mo. App. 2011) (denying the State's writ petition after the circuit court imposed the "ultimate sanction" by **excluding all the State's evidence** after finding the extensive record was "replete with instances of the State's bad faith"). In contrast, there was no evidence the State, in this case, attempted to sabotage Zuroweste's defense, gain an advantage at trial through the late disclosure, or otherwise acted in bad faith. Rather, the State unjustifiably chose to delay determining whether Zuroweste made calls from the jail and disclose the recorded call until it determined whether Zuroweste's case would proceed to trial. While this was an intentional choice and could properly be considered a willful discovery violation, the record does not establish the State committed the violation in bad faith warranting the disfavored and severe sanction of excluding the evidence.

Furthermore, despite the dissent's attempt to characterize the sanctions authorized by Rule 25.18 as mandatory, a willful violation of the discovery rules does not mandate exclusion. In other words, Rule 25.18 does not require the imposition of a sanction in this case; it merely authorizes the circuit court to do so in its discretion. "A trial court's denial of a requested sanction is an abuse of discretion only where the admission of the evidence results in fundamental unfairness to the defendant." *Edwards*, 116 S.W.3d at 534. Zuroweste has not shown the State's late disclosure resulted in fundamental unfairness

---

merely because one does not wish to bother with following the rules of discovery unless the case is actually proceeding to trial.

21

requiring exclusion of the recorded telephone call. Accordingly, the circuit court did not abuse its discretion in overruling Zuroweste's motion for sanctions.

## Conclusion

Because the State's discovery violation did not warrant exclusion of the evidence, the circuit court's judgment is affirmed.

_____
W. Brent Powell, Judge

Fischer, C.J., Wilson, J., and Chapman, Sp.J., concur;
Stith, J., dissents in separate opinion filed;
Draper and Russell, JJ., concur in opinion of Stith, J.
Breckenridge, J., not participating.



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
      **Respondent,** )
)
vs. )    **No. SC97229**
)
DANIELLE ANN ZUROWESTE, )
)
      **Appellant.** )

**Concurring in Part and Dissenting in Part**

I agree with the portion of the majority opinion holding the prosecutor committed a serious violation of Rule 25.03(C)[1] by failing to timely disclose the recording of one of defendant's jail telephone calls until late in the afternoon of the Thursday before a holiday weekend, with trial beginning on Monday. I strongly disagree, however, with the majority's conclusion that, even in light of the prosecutor's willful violation of Rule 25.03(C), the trial court did not abuse its discretion in failing to impose *any* sanction for the prosecutor's intentional disobedience to this Court's rules.

---

[1] All rule references are to the Missouri Supreme Court Rules in effect in 2016 unless otherwise stated.

1

***I.*** ***The Prosecutor Willfully Violated Rule 25.03 by Failing to Disclose the Inculpatory Call until the Weekend before Trial and by Never Providing the Other Jail Calls***

First, as the majority concedes, this violation was willful. The prosecutor's own words show he made it his practice not to attempt compliance with Rule 25.03 until a case actually was set for trial, even though he knew Rule 25.02 required a complete response to discovery within 10 days. While the record shows the prosecutor failed to comply with the rule as an ill-considered means of balancing a busy docket by only providing discovery in cases he thought would not plead rather than in a bad faith attempt to sabotage the defense, his violation was still both knowing and willful. Moreover, he did not just fail to disclose the single call he relied on so heavily at trial; there were other known calls that he *never* turned over to the defense. Rule 25.03(C) does not state it applies only to defendants who intend to go to trial, nor does it allow the prosecutor to cherry-pick what evidence he or she thinks the defense needs to see. Timely, complete responses to discovery are required in all cases. Indeed, without those responses it often would be difficult for the defendant to make a knowing determination whether to plead or to go to trial. Such was the case here.

While the majority says the defense had "four days" to prepare to meet this new evidence after the prosecutor finally revealed one of the defendant's telephone calls, such artful wording cannot hide the fact the prosecutor sent defense counsel the recording of the phone call in question only 20 minutes before the close of the last business day before trial. He called defense counsel at 4:40 p.m. on a Thursday before a national holiday. Defense counsel had only Veterans Day, Saturday and Sunday to attempt to investigate this

evidence, and she stated her investigator was not available on a holiday without notice.

This caused fundamental unfairness because, as defense counsel told the court below:

> Judge, the primary object of the discovery process is to permit the defendant an opportunity to prepare in advance for trial and avoid surprise. Those discovery rules lay out the time period with which the State has to follow those rules and disclose everything to the defense. Here they have ten days to disclose all discovery, and that's noted in the Rule 25.03. We filed our request for discovery on June 10th, 2016. Here we are November 10th at 4:45 in the afternoon, or 4:40, excuse me, I think that's the actual time, when the State has sent me this call.

> Judge, the phone call is from September of 2015, so it's not like the State can say well this call was just made or anything like that. I think that would be a unique situation that would allow this late discovery, but Judge the facts are this case or this phone call is more than a year old and the State should have known.

Defense counsel noted that such late disclosures were a pattern and practice of this

prosecutor's office, stating:

> Further, Judge, I think my issue is that this isn't the first time this has happened with the prosecutor's office, that it seems to be a pattern to me and I'm not alleging any kind of, you know, malfeasance on the part of the State, but I am getting discovery very late for other trials. In, I think it was the September trial, I was forced to ask for a continuance at the last minute because of that. In October I was given information at the last minute. We proceeded with trial anyway, but this has been happening quite a lot. And Judge, I think that the failure to comply with the rules of discovery not only violates Miss Zuroweste's rights to a fair trial here but it also clogs up the Court's docket.

The prosecutor did not deny that he had failed to reveal the inculpatory telephone

call until 20 minutes before the holiday weekend began. Nor did he claim he had tried but

been unable to find this call until the day he revealed it. *Indeed, he did not even deny that*

*this was not the first time he had failed to comply with Rule 25.03.* Instead, he made it

clear that he did not even try to fully comply with discovery requests until he knew a case

3

was going to trial. If the prosecutor believed a case would be continued or result in a plea deal, he willfully chose to not comply with discovery requests. He then said he was not casting blame, but, in effect, he argued it was the fault of defense counsels in general for not letting him know in advance whether they would be pleading guilty so he would know in which cases he had to actually produce discovery and in which he could safely fail to follow the rules:

> Moreover, I would point out that the defense counsel casts aspersions upon the prosecutor's office for saying that this is some kind of pattern of behavior and I would point out that as this Court and both counsel are well aware it's difficult to juggle the trial docket. We don't know what case is going sometimes until days before and I would point out that defense counsel was representing [name and case number omitted] which had a UMDDL. The prosecutor's office was ready to try it and thought it was going and defense counsel actually filed a motion to continue in this case which then takes our attention off of preparing this case. So it's a little bit disingenuous when they're saying this is a pattern of behavior and yet there's a shell game being played to where the State's having to prep multiple cases for trial and but we don't know which one's going to go until days before, in part because of defense counsel's conduct. I'm not -- Again, I'm not saying, this isn't a personal attack. Miss Thoman is very thorough and does her job well. I don't think she's doing anything to vex, harass or delay

As the majority recognizes, at the time relevant here the prosecution was required to file its response within ten days after service unless an extension was granted under Rule 25.02, and there is no suggestion such an extension was requested here.[2] This dilemma of not knowing which case warrants full discovery until the week before trial existed only because the prosecutor knowingly and willfully chose not to comply with the deadlines for discovery and did not even search for all discoverable material until the last minute. The

---

[2] As amended effective July 1, 2018, the prosecutor has 14 days to respond to a discovery request under Rule 25.02, absent an extension of time.

duty to respond to discovery within ten days does not vary depending on whether the prosecutor thinks the defendant will take a plea or go to trial. Indeed, a defendant's decision whether to plead or go to trial itself will be affected by the strength of the prosecution's case, which in turn depends on what evidence the defense believes the prosecutor has. That is exactly why the prosecution is not permitted to wait until just days before trial to respond to discovery. And that is exactly the prejudice defense counsel says occurred here – the late disclosure prevented her from properly investigating the case:

> Judge, this violates the defendant's right to due process, effective representation, confrontation and fair trial and I think that Rule 25.18 says, or I know that it says when a party fails to comply with the rules of discovery the Court may exclude that evidence as a sanction and I think that's the appropriate remedy here since it was given to me on November 10th at 4:40, which is the day before a holiday. My investigator can't work. There's no way that I can work on getting more information for this.
> ….
> And Judge, can I make a further point? And once again the State is saying well the defense should have known about this, but I reiterate my point that it is not my job as defense counsel to seek out evidence against my client. It is the State's job to prove the case against Miss Zuroweste here today and it is the State's job to disclose what evidence they have. When they fail to do that you can't shift the burden to me. That's not the way this goes and that's what it feels like the State is doing by saying well you should have known all these things, but that's shifting the burden of their evidence to me and that's incorrect.

Further, the majority ignores another highly significant and willful failure to disclose by the prosecutor. Even after the prosecutor found out about the inculpatory telephone call on the Thursday before trial and sent a recording of it to defense counsel, he failed to disclose there were numerous other telephone calls made by the defendant from the jail. Even on the morning of trial, the prosecutor did not disclose or even bring to court

5

a recording or transcript of these other calls. Defense counsel objected this precluded her from investigating possible defenses which these recordings might support or reveal:

> Judge, my other issue with this is this is one phone call. Miss Zuroweste was in custody for at least several days. I don't know if there are other phone calls that could be potential Brady material, they could contain exculpatory evidence or they could put into context the September 26th, 2015, call. The failure to disclose this until the very last minute prevents me from being able to investigate those things and try and discover that.

Later, defense counsel further addressed the difficulties caused by the failure to reveal these other calls:

> … Judge, I think the fact that I was unable to seek out any further calls that may put this call into context I think is prejudicial to the defendant here and I think not being able to have the time to do that and be able to offer any kind of evidence to counteract what the State will present to the jury I think is prejudicial to defendant and that's why it shouldn't be allowed.

Rather than concede his violation, the prosecutor erroneously told the trial court the prosecution had to disclose only calls it intended to introduce at trial, but nonetheless magnanimously offered to make the other calls available to defense counsel but told the judge the failure to produce them should not be considered in ruling on the admissibility of the inculpatory call:

> [*Prosecutor*]: Absolutely the State -- *any evidence the State has that it intends to use against the defendant the State has to turn or over* and as soon as I got the tape I turned it over. I made diligent effort to inform Miss Thoman. I didn't just send it through the mail because I didn't want it to be like that. I think it should be fair so I instantly informed Miss Thoman of the existence and the nature of this statement. *But certainly Miss Zuroweste knew about it before the State did and so I think that reduces the prejudicial impact. It's not about shifting burden. It's about prejudice to the defendant with the trial strategy.*
> What we still haven't heard is how this particular call affects the trial strategy. *To the extent she's trying to get access to other calls, fine, we can do that.*

6

I'll go -- We can go downstairs and make a disk of all the calls but I don't -- there's nothing -- that doesn't mean this call doesn't come in.

THE COURT: Okay.

[*Prosecutor*]: There's nothing exonerating on the calls and that's the other point I want to make.

(Emphasis added).

This was enough for the judge, who admitted the inculpatory evidence:

I'm going to grant the motion to endorse the witness, Matt Schmutz, and over the defendant's objection. I'm going to deny their motion to exclude that telephone call. Okay.

Of course, the prosecutor is not permitted to turn over only that evidence which he, the prosecutor, thinks may be exculpating. He obviously is not aware of the defense strategy and so could not know what other calls might be relevant. The rules require *all* statements of the defendant to be turned over, not merely exculpatory ones. *See Rule 25.03*. The prosecutor admitted he was aware of these calls and had been since at least the prior Thursday, yet even as trial began had failed to make them available to the defense. If, as the majority says, the prosecutor's failure to reveal the inculpatory phone call can be forgiven because defense counsel had an alleged "four days" – albeit all but 20 minutes of that time constituted a holiday weekend – then counsel was deprived of even those "four days" in regard to these other telephone calls. This clearly constitutes another knowing and willful violation of Rule 25.03.

## II.     The Prosecutor's Violation was Categorically Worse Because He Failed to Disclose Zuroweste's Own Statements

Bad as the prosecutor's failure to take ownership of his discovery violation was, his next comments to the court were even worse. He argued the effect of his violation should

7

be discounted because it was merely a failure to disclose the defendant's own statements, and of course defendant knew jail calls were subject to recording so there could not be much unfairness resulting from the late disclosure:

> Your Honor, I would point out a couple things. Number one, I agree with the case law she cited. The idea of the rules in discovery is to prevent trial by ambush. If we had a bloody knife hidden in an evidence locker somewhere that we didn't pull out until the day of trial that would be unfair. But if you look at the nature of this evidence this is her client's statements on a recording where when she's making the call it says these are subject to monitoring, so it's a little bit different than evidence that she had no idea could possibly exist.

The trial court apparently also thought the fact the statements were those of the defendant mitigated any resulting unfairness, stating:

> Well, and my only thought would be that perhaps if it's extremely damning that maybe she would of taken a plea, you know, because my understanding was there was a plea, and maybe we can do that in just a little bit, the Frye hearing on it, but my understanding, that would be my thought, is that perhaps if it was, you know, so bad, you know, saying yep, I did it and they've got her on recording saying that I can see why now at the last minute it might affect their defense strategy a little bit as far as being able to either have her get on the stand and say oh, nope, I didn't do it and I never said anything about it and now all of a sudden we've got a tape, a recording that says she did. So I can understand that.

> On the other hand, I can understand the State's argument where, you know, if she said it she said it and you've had at least time to look at it and listen to it since he sent it to you and I mean it is what it is. It could come in as that statement.

The prosecution and the court were entirely wrong on the law regarding failure to disclose a statement of the defendant, however. This Court and the appellate courts have recognized on multiple occasions that such a failure to disclose a defendant's own statements is more, rather than less, likely to result in fundamental unfairness because

8

"inculpatory statements, carrying such great weight with the jury, demand disclosure, and violation of the rule of disclosure [must be] examined with grave suspicion." *State v. Scott 943 S.W.2d 730, 739 (Mo. App. 1997).* "If the State can be forgiven its duty to disclose a statement of the accused on the basis that the accused must have already known about the statement because he made it, then we will have eviscerated Rule 25.03(A)(2)." *State v. Willis, 2 S.W.3d 801, 808 (Mo. App. 1999).*

In more than one instance, therefore, courts have held a defendant's "trial was rendered 'fundamentally unfair' when [he] was refused inspection of the substance of oral statements made by [him] to [the detective]." *State v Scott, 479 S.W.2d 438, 442-43 (Mo. banc 1972)* (Internal citation omitted). Moreover, *Scott* cautioned:

> We must be mindful of the role of a confession. It frequently becomes the core of the State's case. It is not uncommon for the judicial proceeding to become more of a review of what transpired at headquarters than a trial of the basic criminal event itself.… When a confession is given and issues surrounding it tend to displace the criminal event as the focus of the trial, there should be like opportunity to get at the facts of the substituted issue. Simple justice requires that a defendant be permitted to prepare to meet what thus looms as the critical element of the case against him.

*Id. at 442.* This Court reached a similar result in *State v. Harrington, 534 S.W.2d 44, 47-48 (Mo. banc 1976)*, which quoted extensively from *Scott* and held it was fundamentally unfair for the prosecutor to disclose defendant's own statements the morning of trial. *Accord State v. Childers, 852 S.W.2d 390, 391 (Mo. App. 1993)* ("Statements made by a defendant which are inculpatory are almost by definition prejudicial.").

This reasoning has specifically been applied to a failure to disclose telephone calls made from jail. In *State v. Johnson, 513 S.W.3d 360, 363 (Mo. App. 2016)*, a case eerily

9

similar to this one, the defendant made incriminating phone calls while in jail awaiting trial. The prosecutor had recordings of these phone calls but waited until the Friday before trial, which happened to be a state holiday, to disclose them. *Id.* In finding the prosecutor's discovery violation resulted in fundamental unfairness the court referred to the jail calls as "highly prejudicial" and quoted *State v. Henderson, 410 S.W.3d 760, 766 (Mo. App. 2013)*, as saying, "[F]ailure to produce a statement made by the defendant is uniquely prejudicial compared to failure to disclose a witness or photograph, for example, because of the great weight that the defendant's inculpatory statements carry." *Id. at 367.*

The majority tries to distinguish *Johnson* by noting that there, the prosecutor admitted he had failed to produce the statements in order to gain a strategic advantage, and suggests such was not the case here. This is wrong in two respects. First, while the prosecutor in this case did not act in "bad faith" in the sense that he acted with a conscious intent to sabotage the defense, he can hardly be described as acting in good faith. The facts show he acted willfully and with knowledge that he was not going to prepare for trial until the last couple of days before trial, and this meant that any evidence he discovered would not be produced to the defense until just before trial. Moreover, the defense reminded the trial court that this was not the first time the prosecutor had tried to play this sort of game with the discovery rules, citing two cases in just the few months prior where the prosecutor had similarly hidden the ball until the last minute.

Second, Rule 25.18 does not make a distinction between sanctions for actions undertaken willfully as compared to actions taken in bad faith. To the contrary, it

10

distinguishes between actions undertaken willfully and a mere failure to comply with an order without regard to the intent with which it was done:

> If at any time during the course of the proceeding it is brought to the attention of the court that a party has failed to comply with an applicable discovery rule or an order issued pursuant thereto, the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it deems just under the circumstances. *Willful violation by counsel of an applicable discovery rule or an order issued pursuant thereto may subject counsel to appropriate sanctions by the court.*

*Rule 25.18* (emphasis added).

In other words, Rule 25.18 provides that willful violations are so serious that counsel may themselves be sanctioned for their misconduct. It does not limit this greater liability for sanctions to conduct undertaken in bad faith; rather, a willful violation of the rules is sufficient to merit the higher sanction. And this is as it should be. A prosecutor's knowing decision to flout the discovery rules, particularly as here where he does so on a repeated basis confirming it is a knowing and not an inadvertent violation, merits at least *some* sanction.

This is made all the worse by the fact the undisclosed evidence was defendant's own statement. Even the majority opinion recognizes the heightened severity of failing to disclose defendant's own statements:

> The State's failure to produce a defendant's own statement is a particularly concerning form of discovery violation. *See State v. Henderson*, 410 S.W.3d 760, 764 (Mo. App. 2013) (holding the State's "failure to produce a statement of the accused is in a different category from failure to disclose a witness or a photograph"). "Because they carry such great weight with the jury, inculpatory statements demand disclosure, and a violation of the rule of disclosure requires examination with grave suspicion." *Id*. at 765.

But, it appears the majority then applies exactly the same analysis to whether the trial court abused its discretion in not imposing sanctions as it would have had the violation not involved the defendant's own statements. Moreover, it never discusses the heightened level of violation caused by the prosecutor's admitted failure to disclose the other telephone calls even as of the morning of trial. The majority thereby ignores the many cases it just acknowledged discussing the uniquely prejudicial effect of using a defendant's own statements against her, and gives absolutely no weight to the prosecutor's multiple violations or to the fact those violations were willful rather than inadvertent or negligent.

### III. An Express Request for a "Continuance" was not Required Where Counsel Requested Other Relief, the Prosecutor had a Pattern of Willfully Failing to Disclose and the Trial Court Failed to Afford Any Sanction

Despite the gravity of the prosecutor's misconduct and the complete failure of the trial court to impose any sanction, the majority puts the responsibility on the criminal defendant, arguing that because the defendant primarily requested an exclusion rather than a continuance, it was proper to afford her no relief at all. This is wrong for at least three reasons.

First, Missouri law has recognized "Exclusion of a witness may be proper when no reasonable justification is given for the failure to disclose the witness." *State v. Martin, 103 S.W.3d 255, 261 (Mo. App. 2003), citing, State v. Miller, 935 S.W.2d 618, 623 (Mo. App. 1996); State v. Watson, 755 S.W.2d 644, 646 (Mo. App. 1988); State v. Harris, 664 S.W.2d 677, 680-81 (Mo. App. 1984).* This reasoning is equally applicable to the failure to disclose the telephone call. Here, not only did the prosecutor not offer a reasonable justification for his failure to disclose, but he admitted it was a considered tactic he chose

12

to use to deal with his burgeoning caseload, and then made the jail call the key focus of his case.

Second, defense counsel did not solely ask for exclusion of the phone call. She requested the trial court "preclude the introduction of the jail phone call made by Defendant … under Missouri Supreme Court Rule (Rule) 25.18, as sanction for the State's failure to timely disclose discovery as mandated by Rule 25.03 and 25.08, or *any such relief this court deems necessary*." (Emphasis added). She so requested because Rule 25.18 provides "the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other order as it determines just under the circumstances." *Rule 25.18.*

The rule thereby gives the trial court discretion as to what type of remedy to provide, and counsel called on the trial court to exercise that discretion. Yet, the trial court did *nothing*. It simply allowed the evidence to come in without limitation or delay despite the knowing and willful violation of the discovery rules as to both the inculpatory telephone call and the unknown content of the other jail calls, and despite the prosecutor's admission it was his practice not to respond to discovery in the time set by the rules.

In *State v. Whitfield, 837 S.W.2d 503, 507 (Mo. banc 1992)*, this Court said:

> In general, the trial court has discretion in the sanctions imposed for failure to comply with Rule 25.03(A). *See Kilgore*, 771 S.W.2d at 66. Rule 25.16 makes sanctions permissive rather than mandatory. **The trial court, however, is required to tailor the remedy to alleviate harm to the defense from the failure to disclose.** "The Rules of criminal discovery are not 'mere etiquette' nor is compliance discretionary." *State v. Luton*, 795 S.W.2d 468, 477 (Mo.App.1990).

13

(Emphasis added). Numerous decisions have reaffirmed that it is the trial court's duty to "tailor the remedy to alleviate harm to the defense." *State v. Wolfe, 13 S.W.3d 248, 259 (Mo. banc 2000), overruled on other grounds by Mitchell v. Kardech, 313 S.W.3d 667, 670 (Mo. banc 2010)*; *State v. Petty, 967 S.W.2d 127, 137 (Mo. App. 1998)* (accord); *see also State v. Spencer, 49 S.W.3d 221, 224 (Mo. App. 2001)* (court offered defense counsel a short period of time to interview a few untimely disclosed witnesses, and denied a continuance to consider other untimely disclosed evidence).

That was the trial court's abuse of discretion – it did not simply fail to exclude the evidence, it *did nothing*. Rule 25.18 suggests three tools for trial courts in the face of a discovery violation: ordering disclosure, granting a continuance, or exclusion. While the defendant stated a preference for exclusion, the motion specifically cites to Rule 25.18 and asks for "or any such relief this court deems necessary." There is no way to read that other than the defendant asking the trial court to consider the other two options provided by the rule. The trial court could have delayed the start of the trial or delayed its ruling on the motion to exclude until after the prosecutor turned over the remaining unproduced phone calls, or until defense counsel could contact the persons defendant had called once she learned from the tapes who they were. It could have ordered the prosecutor to turn over the other jail calls. Yet, it did none of these things. It did not even give counsel adequate time to discuss the issues with her client. Instead, the court reasoned defendant could still decide whether to plead or whether to go to trial because, as the statements were her own, she must know what they were. Doing nothing is the opposite of tailoring a remedy to alleviate the harm. This decision resulted in fundamental unfairness.

14

Third, while here counsel did ask the trial court to grant such other relief as it found necessary, which would include a continuance, at least three cases have found reversible error due to fundamental unfairness where the trial court undertook no sanctions even where defense counsel failed to ask for a continuance. In *Willis*, similar to the case now before the Court, the prosecutor waited until the day before trial to produce letters written by defendant expressing his remorse for injuring his baby and saying it was an accident. *2 S.W.3d at 803*. The appellate court agreed the letters should be excluded because the discovery violation was the failure to disclose the defendant's own statements and a few hours delay would not have made any difference in the prejudice, stating:

> [U]nder the circumstances of this case, Appellant's failure to ask for a continuance has no bearing on whether the State's discovery violation resulted in fundamental unfairness to Appellant. Furthermore, we emphasize that failure to produce a statement of the accused is in a different category from failure to disclose a witness or a photograph.

*Id. at 807*. The parallels are evident – the prosecutor here, as in *Willis,* failed to disclose defendant's own statements and thus gave the defense insufficient time for investigation. In *Willis,* defense counsel at least had a full work day in which to try to determine a theory to respond to the newly disclosed letters, whereas here defense counsel had only 20 minutes on Thursday and then a holiday weekend. *See also Henderson, 410 S.W.3d at 766* (continuance request not necessary where prosecutor revealed defendant's own statement only after opening statements).

Despite the majority's attempt to distinguish it, *Johnson* is also directly on point. The *Johnson* prosecutor failed to disclose the phone calls to defense counsel until the Friday before trial, but the office was closed that Friday for a state holiday and the

15

prosecutor did not personally notify defense counsel. *513 S.W.3d at 363.* The only distinction is, in *Johnson* the prosecutor said he purposely delayed disclosure to handicap the defense; here he said he did it to benefit himself and his time for trial preparation. *Id. at 365.* The timing, however, is nearly identical – the defense by the majority's method of counting would have had three days. *Johnson* properly recognized that, when those days are on a weekend and holiday, they do not provide sufficient notice to allow the defense to prepare for trial. *Id. at 367.* Whether the violation was in bad faith, as in *Johnson*, or knowing and willful, as here, the result is the same – a continuance is inadequate and the evidence should be excluded.

## IV.    *The Prosecutor's Willful Violation Resulted in Fundamental Unfairness*

In light of the willful way in which the prosecutor violated and continued to violate the discovery rules, the majority erred in not finding fundamental unfairness resulted from the trial court's failure to act. "Fundamental unfairness occurs when the state's failure to disclose results in defendant's 'genuine surprise' and the surprise prevents meaningful efforts to consider and prepare a strategy for addressing the evidence." *State v. Thompson, 985 S.W.2d 779, 785 (Mo. banc 1999); accord State v. Taylor, 134 S.W.3d 21, 26 (Mo. banc 2004); State v. Tisius, 92 S.W.3d 751, 762 (Mo. banc 2002)*; *Henderson, 410 S.W.3d at 764; State v. Zetina-Torres, 400 S.W.3d 343, 353-54 (Mo. App. 2013).*

The prosecutor's willful misuse of the discovery rules should not be found to be harmless. Indeed, in the right circumstances, even a negligent violation can result in fundamental unfairness. *Zetina-Torres, 400 S.W.3d at 354* ("Even if the state's failure to disclose is merely the result of negligence, as opposed to a nondisclosure through deceit or

16

guile, fundamental unfairness can still occur."). Knowing and willful violations, such as the violation at issue here necessarily:

> require more serious sanctions than mistaken violations precisely because, among other reasons, they are more likely to cause a "fundamental unfairness" to the opposing party and they show an intentional disregard for the rules and orders of the court rather than a mere negligent violation thereof.

*State ex rel. Jackson Cnty. Prosecuting Attorney v. Prokes, 363 S.W.3d 71, 80 (Mo. App. 2011).* The prosecutor's mere lack of bad faith does not provide a reasonable justification for his conduct and cannot be used to legitimize a knowing and willful failure to abide by discovery rules intended to protect the defendant's right to a fair trial.

If such fundamental unfairness is demonstrated, no further showing of prejudice is required:

> Because no sanctions were imposed in this case, our task is to determine whether the State's discovery violation resulted in fundamental unfairness or substantively altered the outcome of the case. *See State v. Rhodes*, 591 S.W.2d 174 (Mo.App.1979); *State v. Couch*, 569 S.W.2d 789 (Mo.App.1978). *If either inquiry brings forth an affirmative answer*, then the trial court's failure to impose a sanction would constitute an abuse of discretion. *State v. Royal*, 610 S.W.2d 946 (Mo. banc 1981).

*State v. Johnson, 702 S.W.2d 65, 73 (Mo. banc 1985)* (Emphasis added).

Moreover, this Court has recognized that it may be impossible to actually show how the trial would have been different when the violation precludes an investigation, for one cannot show what an investigation would have revealed when the defense was not allowed to undertake the investigation. But, in such a case, where the trial court declines to impose any sanction, it is sufficient if defendant shows "the State's violation resulted in

17

fundamental unfairness or bore *a real potential for* substantively altering the outcome of the trial." *State v. Johnston, 957 S.W.2d 734, 750 (Mo. banc 1997)* (Emphasis added).

In this case, however, we do know how prejudicial the evidence was, and what a difference its exclusion would have made, for we have the prosecution's own words describing the import of the call and the jury's own actions in requesting to listen to it one more time before it reached a verdict.

The prosecutor showed he understood how prejudicial the late-disclosed call was when he highlighted it for the jury again and again. In his opening statement he said:

> [*Prosecutor*]: You're also gonna hear a phone call.
> [*Defense Counsel*]: Objection.
> [Court discusses and overrules objection]
> [*Prosecutor*]:You're gonna get to hear a phone call that the defendant made a few days after she was booked into the jail.
> ....
> You'll never hear on that tape, you'll never hear her say they got me hooked up for something I didn't do. You'll never hear her say I didn't know the stuff was there. You'll never hear her say gosh, if I hadn't smoked pot I wouldn't be in trouble. What she's doing is she's confessing to her friend that she knows she messed up from using methamphetamine because it's now put her lifestyle in jeopardy, it's put her children in jeopardy. That's what you're gonna hear on that tape.

The prosecutor told the jury in closing argument that this inculpatory call was key and definitely was referring to methamphetamine:

> And then you hear her on the jail call, State's Exhibit 8. You hear how upset she is. You remember the audio from State's Exhibit 8 she talks about how Brian regretted getting her into it. Brian regretted getting her into it. I knew it was wrong. She says I'm never doing it again. She says, and excuse my language, folks, I'm using a direct quote here, I don't mean to offend you, but she says I don't want to do this shit no more. Her friend says I told your kids mommy's sick and she needs to get better.
> Well, you don't say that about marijuana pipes. You don't say that about marijuana pipes. She's talking about methamphetamine. That's proof

18

that she knew what was in that baggy that she got busted for cause she's in jail.

> ....

> And when you look at all that evidence and when you think about the video, when you think about the testimony and when you think about that jail call, that admission of guilt, you're right. She doesn't come out and say gosh, I was caught with meth and I feel so bad about it. I wish I hadn't had the meth in the orange baggy. No defendant ever admits to a crime like that. That exists in fantasy and fairy tales and "Law and Order". That doesn't actually happen. When they do things, when defendants admit to things they admit to them by mitigating, minimizing and using synonyms. And that's what she does here. She never says meth, but she says I knew it was wrong, I knew I was hooked on it, I knew I had to get off of it so I could get back to my kids. She's talking about meth, folks. That's an admission of guilt.

> ....

> And you know what? On that jail call you heard how sad she was about it and Sergeant Beekman talked to you about how sad she was, how upset she was when she got busted. She knows she had to get off of it. She knows she has to get off of it to get back to her kids. She's talking about her methamphetamine addiction. That's what she's talking about.

> When you go back to the jury room you can ask for State's Exhibit 8. You can listen to it again if you'd like. All you've got to do is send a note out to the judge, we want to hear that evidence again. Any piece of the evidence you can ask for and you can hear it again if it's entered in as an exhibit.

The length of time the prosecutor spent on the telephone call in his closing argument demonstrates its centrality to the prosecution's case.

Defendant had no opportunity to counter this argument by investigating whether the person to whom defendant spoke, or the other telephone calls apparently *never* disclosed by the prosecutor would have shown defendant was talking about the marijuana she admitted having. The jury was left to accept what the prosecution argued that the one disclosed call was key and showed the defendant admitted to use of methamphetamine. Any doubt about the importance of this argument to the jury was removed when the jury requested the recording of the call during deliberations. The only other item the jury

19

requested was defendant's mug shot. The majority opinion may not think the phone call was important, but the jury certainly did.

The potential for substantially altering the outcome of the trial was clearly shown here. The prosecutor's violation was serious. The majority notes its gravity with words and no action, sending a message to prosecutors everywhere they must not conduct themselves in this way, but if they do, there will be no consequences. The majority errs in failing to find the facts present here – a defendant's own inculpatory statements, extremely late disclosure, emphatic use at trial, reliance by the jury during deliberations, and a willful violation – do not add up to fundamental unfairness.

_____
**LAURA DENVIR STITH, JUDGE**
